

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-7-2001

# Wenger v. Frank

Precedential or Non-Precedential:

Docket 99-3337

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Wenger v. Frank" (2001). *2001 Decisions.* Paper 206.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/206

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 27, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

99-3337

ROBERT E. WENGER, JR.,

Appellant

v.

FREDERICK K. FRANK; ATTORNEY GENERAL
OF PENNSYLVANIA

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. No. 98-cv-01629)
District Court Judge: Malcolm Muir

Argued: March 13, 2001

Before: ALITO and RENDELL, Circuit Judges, and
SCHWARZER,* Senior District Judge

(Opinion Filed: August 27, 2001)

Mary Gibbons, Esq. (Argued)
600 Mule Road, #16
Holiday City Plaza III
Toms River, NJ 08758

Counsel for Appellant

---

* The Honorable William W Schwarzer, Senior District Judge for the
Northern District of California, sitting by designation.

        Michael A. George, Esq. (Argued)
        District Attorney
        Office of District Attorney
        Adams County Courthouse
        111-117 Baltimore Street
        Gettysburg, PA 17325

        Counsel for Appellee

        D. MICHAEL FISHER
        Attorney General
        ROBERT A. GRACI
        Assistant Executive Deputy
        Attorney General
        Office of the Attorney General
        16th Floor, Strawberry Square
        Harrisburg, PA 19120

        Counsel for Amicus Attorney
        General of Pennsylvania

OPINION OF THE COURT

ALITO, Circuit Judge:

This is an appeal from a District Court order dismissing a petition for a writ of habeas corpus filed under 28 U.S.C. S 2254. The District Court dismissed the petition under Rose v. Lundy, 455 U.S. 509 (1982), holding that the petition, which advanced three claims, contained two that were unexhausted and was therefore a "mixed petition." On appeal, Wenger contends that the supposedly unexhausted claims would no longer be entertained by the Pennsylvania courts. Wenger argues that these claims, although never fairly presented to the Supreme Court of Pennsylvania, should be regarded as exhausted by virtue of a general order issued by the Pennsylvania Supreme Court in May 2000. See In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000). Wenger also maintains that, even if these claims were procedurally defaulted, the procedural default has been waived. In addition, he contends that his third claim has clearly been

2

exhausted, has not been procedurally defaulted, and consequently should have been entertained on the merits by the District Court. For the reasons explained below, we reverse the decision of the District Court and remand for further proceedings.

I.

In October 1984, Robert Wenger was arrested and charged in the Court of Common Pleas of Adams County with murder of the first degree (18 Pa. Cons. Stat. Ann. S 2502(a)), murder of the third degree (18 Pa. Cons. Stat. Ann. S 2502(c)), voluntary manslaughter (18 Pa. Cons. Stat. Ann. S 2503(a)(1)), and aggravated assault (18 Pa. Cons. Stat. Ann. S 2702(a)(l)). A preliminary hearing was held, and Wenger was held for court. Wenger and the Commonwealth later negotiated a plea agreement under which the Commonwealth did not seek the death penalty and Wenger pled guilty to criminal homicide generally. After Wenger pled, a degree-of-guilt hearing was held in May 1985, and Wenger was found guilty of murder of the first degree. As required by Pennsylvania law, see 18 Pa. Cons. Stat. Ann. S 1102(a); 42 Pa. Cons. Stat. Ann. S 9756(c), Wenger was sentenced in November 1985 to a term of life imprisonment without parole.

Wenger appealed to the Superior Court. The sole issue raised on appeal concerned the sufficiency of the evidence to support the trial court's finding that he was guilty of murder of the first degree. The Superior Court affirmed, and Wenger did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

In February 1988, Wenger filed a petition under Pennsylvania's Post-Conviction Hearing Act ("PCHA"), 42 Pa. Cons. Stat. Ann. SS 9541 et seq., amended and renamed Post-Conviction Relief Act by the Act of April 13, 1988, P.L. 336, No. 47. Wenger raised three claims. He argued (1) that his trial counsel was ineffective for erroneously advising him "that he would be released within ten years if he was sentenced to life imprisonment," (2) that his trial counsel was ineffective for failing to advise him concerning withdrawal of his guilty plea, and (3) that his trial counsel

3

was ineffective in failing to preserve the right to petition for allowance of appeal to the Pennsylvania Supreme Court.

The Court of Common Pleas held a hearing and received testimony from Wenger, his father, mother, and brother, and his trial attorney. See Commonwealth v. Wenger, Nos. CC-472-84 and CC-496-84 (Adams County Ct. Coin. P1. Oct. 22, 1990). Wenger's attorney testified that he did not give incorrect estimates of Wenger's potential sentence, and the court found this testimony to be credible. The court then stated that Wenger had engaged in an extensive colloquy with the court at the time of his plea, and therefore Wenger understood that he would be sentenced to imprisonment for life. The court rejected Wenger's second claim because Wenger knew of his right to withdraw his guilty plea and Wenger did not request that his attorney move to do so. Finally, the court denied relief on Wenger's third claim because Wenger's counsel had taken a direct appeal to the Superior Court, and granting leave to seek direct appellate review by the state supreme court at this late stage would be redundant in light of Wenger's post-conviction proceedings. The court therefore dismissed Wenger's petition, and Wenger took a timely appeal to the Superior Court, raising the same three issues. The Superior Court affirmed the dismissal in April 1991, and Wenger failed to file a timely petition for allowance of appeal with the Pennsylvania Supreme Court. Wenger later filed a petition for leave to file a petition for allowance of appeal nunc pro tunc, but the Pennsylvania Supreme Court denied that request in March 1992.

In January 1997, Wenger filed a petition under Pennsylvania's revised Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. S 9541 et seq. This petition, as ultimately amended, claimed that Wenger's conviction resulted from a guilty plea that had been unlawfully induced, that an unlawful sentence of life imprisonment without parole had been imposed, and that Wenger had been denied the effective assistance of counsel. In a memorandum submitted with this motion, Wenger discussed various theories supporting his claim that his sentence was illegal. Among other things, Wenger raised the following question:

4

Are legal definitions and common understandings of the terms "life imprisonment" and "life imprisonment without [right to] parole" constitutionally distinguishable such that imposition of the latter as an equivalent substitute for the former invokes protection of the Due Process Clause of the Fourteenth Amendment as well as the Cruel and Unusual Punishment prohibitions of the Eighth Amendment?

App. 59-60. For convenience, we will refer to this argument as the "Due Process/Eighth Amendment" argument.

The Court of Common Pleas dismissed the petition and issued an opinion. The court noted that one of Wenger's contentions in his first petition for post-conviction relief was that "plea counsel erroneously told and led[him] to believe that his exposure was ten years at most." App. 66. The court noted that it had previously rejected this argument and had found "that defendant clearly understood that he would be sentenced to life imprisonment." Id. The court further observed that this decision has been affirmed by the Superior Court. Id. The court then noted that the current petition also alleged "that counsel was ineffective for failing to advise [Wenger] that life meant life without parole," and the court observed that this "assertion is nothing more than a reworked version of a previously litigated claim" and did not justify either a hearing or relief. Id.

The court then added:

> Additionally, defendant has sought permission to amend his petition in order to attack the legality of his sentence. Although we are impressed with defendant's brief, we decide the challenge does not entitle him to relief. A sentence of life imprisonment is legal and violates neither equal protection nor the prohibition against cruel and unusual punishment.

Id.

Wenger appealed this decision to the Superior Court and raised two arguments. He contended that "plea counsel's ineffective assistance violated rights guaranteed by the Sixth and Fourteenth Amendments to the United States

5

Constitution," and he asserted the Due Process/Eighth Amendment argument. App. 70.

The Superior Court affirmed. The court wrote that it "need not reach and discuss the issues posited on this second appeal for ineffectiveness relief " because, as the court below had put it, the current appeal was " `nothing more than a reworked version of a previously litigated claim and does not justify either a relief or hearing.' " App. 71-72. The court stated that it had "already ruled on the merits of whether the guilty plea was entered knowingly and intelligently" and added: "We are constrained to conclude that the only issues that Wenger now seeks to present to this tribunal have been previously litigated." Id. at 72-73.

Wenger filed a petition for allowance of appeal to the Pennsylvania Supreme Court. The only issue raised was the Due Process/Eighth Amendment argument. Leave to appeal was denied in May 1998.

Wenger then filed a petition for a writ of habeas corpus under 28 U.S.C. S 2254 in the United States District Court for the Middle District of Pennsylvania. The petition raised the following three claims:

> 1. Whether petitioner was denied his right to effective assistance of counsel based on counsel's erroneous advice that even if a life term was imposed, petitioner would only be required to serve a seven to ten year term of imprisonment before parole?

> 2. Whether petitioner was denied effective assistance of counsel when plea counsel failed to confer with the petitioner regarding withdrawal of the plea and counsel's failure to file such a motion?

> 3. Whether legal definitions and common understandings of the terms "life imprisonment" and "life imprisonment without parole" are Constitutionally distinguishable such that imposition of the latter as an equivalent substitute for the former invokes protection of the Due Process Clause of the Fourteenth Amendment as well as the cruel and unusual punishment prohibitions of the Eighth Amendment?

6

The Magistrate Judge to whom the case was referred recommended that Wenger's petition be dismissed for failure to exhaust state remedies, and the District Court adopted that recommendation. The District Court concluded that the first two claims had not been fairly presented to the Pennsylvania Supreme Court and were thus unexhausted. The court noted that Wenger had argued that, if the first two claims were found to be unexhausted, he wished to delete them and proceed with only the third, exhausted claim. The court rejected that request, however, because Wenger had not filed a motion to amend or resubmit his habeas corpus petition. The court therefore dismissed the entire petition, and Wenger took the present appeal.

II.

We first consider the question whether the two ineffective assistance of counsel claims presented in Wenger's federal habeas petition remain unexhausted. With two exceptions not applicable here, 28 U.S.C. S 2254(b)(1) provides that "[an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."1 Under 28 U.S.C. S 2254(c), such a petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." In O'Sullivan v. Boerckel, 526 U.S. 838 (1999), the Supreme Court held that while exhaustion does not demand that state prisoners "invoke extraordinary remedies," "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Id. at 844-45. This means, the Court explained, that state prisoners must "file petitions for discretionary review when that review is

_____

1. Because Wenger's federal petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act, the version of S 2254 as amended by that Act applies.

7

part of the ordinary appellate review procedure in the State." Id. at 847. The Court further noted that, in determining whether a state prisoner has preserved an issue for presentation in a federal habeas petition,"we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts." Id. at 848. If a claim has not been fairly presented to the state courts but further state-court review is clearly foreclosed under state law, exhaustion is excused on the ground of futility. See, e.g., Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000); Toulson v. Beyer, 987 F.2d 984, 987-88 (3d Cir. 1993). Under those circumstances, the claim is procedurally defaulted, not unexhausted, and the claim may be entertained in a federal habeas petition only if there is a basis for excusing the procedural default. Procedural default may be excused if a petitioner can show "cause" and "prejudice" or that a "fundamental miscarriage of justice" would result. Edwards v. Carpenter, 529 U.S. 446, 551 (2000).

In the present case, Wenger raised his ineffective assistance of counsel claims before the Court of Common Pleas and the Superior Court in his first state petition for collateral review, and both of those courts entertained (and rejected) those claims on the merits. However, Wenger did not "fairly" present those claims to the Pennsylvania Supreme Court, because he did not file a timely petition for allowance of review. Although he did seek leave for permission to file such a petition out of time, the Pennsylvania Supreme Court denied that petition. Under those circumstances, the claims were not fairly presented to the state supreme court. Caswell v. Ryan, 953 F.2d 853, 858-60 (3d Cir. 1992). It is also apparent that Wenger did not fairly present these claims to the Pennsylvania Supreme Court in connection with his second state petition for collateral review. While Wenger did file a timely petition for allowance of appeal on that occasion, his petition did not raise the ineffective assistance of counsel claims.

Thus, if it was necessary under O'Sullivan for Wenger to present these claims to the Pennsylvania Supreme Court -- that is to say, if the filing of a petition for allowance of

8

appeal was "part of the ordinary appellate review procedure in the state" -- the claims were not properly exhausted. It is apparent, however, that the Pennsylvania courts would no longer entertain those claims, see Doctor v. Walters, 96 F.3d 675, 681-82 (3d Cir. 1996), and neither Wenger nor the Commonwealth suggests otherwise. Indeed, the Court of Common Pleas and the Superior Court refused to consider these claims on the merits when Wenger attempted to raise them in his second state collateral attack. Accordingly, exhaustion would be excused on the basis of futility, and the claims would be subject to the doctrine of procedural default. Under these circumstances, we must decide whether the filing of a petition for discretionary review by the Pennsylvania Supreme Court was "part of the ordinary appellate review procedure in the state" at the time or times in question.

Wenger maintains that discretionary review by the Pennsylvania Supreme Court is not part of the ordinary process of appellate review by virtue of Order 218, which was issued by the Pennsylvania Supreme Court in May 2000. That order provides as follows:

> AND NOW, this 9th day of May, 2000, we hereby recognize that the Superior Court of Pennsylvania reviews criminal as well as civil appeals. Further, review of a final order of the Superior Court is not a matter of right, but of sound judicial discretion, and an appeal to this Court will only be allowed when there are special and important reasons therefor. Pa.R.A.P. 1114. Further, we hereby recognize that criminal and post-conviction relief litigants have petitioned and do routinely petition this Court for allowance of appeal upon the Superior Court's denial of relief in order to exhaust all available state remedies for purposes of federal habeas corpus relief.

> In recognition of the above, we hereby declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error. When a claim has

9

been presented to the Superior Court, or to the
Supreme Court of Pennsylvania, and relief has been
denied in a final order, the litigant shall be deemed to
have exhausted all available state remedies for
purposes of federal habeas corpus relief.

This Order shall be effective immediately.

This Order was in all likelihood prompted by Justice
Souter's concurring opinion in O'Sullivan. In that opinion,
Justice Souter stated that he understood O'Sullivan "to
have left open the question . . . whether [the Court] should
construe the exhaustion doctrine to force a State, in effect,
to rule on discretionary review applications when the State
has made it plain that it does not wish to require such
applications before its petitioners may seek federal habeas
relief." 526 U.S. at 849 (Souter, J., concurring). Justice
Souter went on to note the example of an order issued by
the Supreme Court of South Carolina that is similar to the
Pennsylvania Supreme Court's Order 218. Id. Wenger
interprets the Pennsylvania Supreme Court's Order No. 218
to mean that he exhausted his ineffective assistance of
counsel claims when he raised those claims in the Court of
Common Pleas and the Superior Court in his first petition
for state collateral review and that his failure fairly to
present those claims to the Pennsylvania Supreme Court is
immaterial for exhaustion purposes.

After hearing oral argument in this case, we requested
the parties to provide supplemental submissions addressing
the question whether Order 218 "applies to a case in which
the time for filing a petition for discretionary review expired
prior to the date of the order." We also invited the Attorney
General of Pennsylvania to provide an amicus submission
on this question. In that submission, the Attorney General
contended that Order 218 should not be interpreted as
having a retroactive effect and also that the Order was
issued in violation of the state constitution. The Attorney
General argued that the Order purports to alter the state
supreme court's jurisdiction but that under the state
constitution the state supreme court may not alter the
jurisdiction of any court. Pa. Const. art. V, S 10(c).

Although it will undoubtedly be necessary for our court
to address the broader question whether the filing of a

10

petition for discretionary review with the Pennsylvania Supreme Court is now "part of the ordinary appellate review procedure in the state," we find it unnecessary to reach that issue here. In this case, we find it sufficient to hold that Order 218 did not retroactively alter the nature of "the ordinary appellate review procedure" in the Commonwealth. We reach this conclusion for three reasons.

First, we believe that the language of the Order, although not in itself conclusive, suggests that the Order was intended to be prospective only. The Order states that the court "hereby declare[s]" that, in appeals from criminal convictions or post-conviction relief matters, "a litigant shall not be required to petition for rehearing or allowance of appeal." Order No. 218, supra (emphasis added). The Order also states that it is "effective immediately." On the whole, this language seems to us to be forward-looking.

Second, what we understand to be the primary purpose of this Order and others like it would not be served by retroactive application. Orders of this type are based on the view that requiring state prisoners to file petitions for discretionary review in order to pave the way for federal habeas petitions does little good (because so few petitions for discretionary review are granted) but imposes a burden on overworked state supreme courts and produces pointless delay. See O'Sullivan, 526 U.S. at 849 (Souter, J., concurring; id. at 863 (Breyer, J., dissenting). In his dissent in O'Sullivan, Justice Breyer cited the low percentage of petitions granted by several state supreme courts. Id. at 863 (Breyer, J., dissenting). He then observed:

> On the majority's view, these courts must now consider additional petitions for review of criminal cases, which petitions will contain many claims raised only to preserve a right to pursue those claims in federal habeas proceedings. The result will add to the burdens of already overburdened state courts and delay further a criminal process that is often criticized for too much delay.

Id. at 863. He expressed "optimism," however, because of the suggestion in Justice Souter's concurrence that a state

11

could, if it desired, eliminate the requirement of having such claims raised in petitions for discretionary review to the state's highest court. Id. at 864. The interests cited by Justice Breyer -- relieving the burden on state supreme courts and preventing delay -- would obviously not be served by retroactive application of Order 218. See Mattis v. Vaughn, 128 F. Supp. 2d 249, 262 (E.D. Pa. 2001). Any petitions filed prior to that Order solely for the purpose of satisfying the federal exhaustion requirement still had to be passed upon by the state supreme court, and federal habeas review was still delayed until that was done.

Third, we find it difficult to see how the federal habeas statute could accommodate retroactive application. We must not lose sight of the fact that the question before us is whether or not the filing of a petition for allowance of appeal was an "available" state remedy in 1991. 28 U.S.C. S 2254(b)(l)(A). Whether a remedy was or was not "available" appears to us to be a question of objective historical fact. While a state may, of course, prospectively change the remedies that are available under state law, if a remedy was available or unavailable at some time in the past, it is difficult to see how that fact can be retroactively altered. Our court has previously held that a petition for allowance of appeal is an available remedy in Pennsylvania, and we have held that claims were not exhausted or were procedurally defaulted because such review was not sought See e.g., Evans v. Court of Common Pleas , 959 F.2d 1227, 1230 (3d Cir. 1992); Caswell, 953 F.2d at 860; Beatty v. Patton, 700 F.2d 110, 111-12 (3d Cir. 1983). Whatever prospective effect Order 218 has, we do not think it in effect overrules those decisions as they pertain to cases that had passed that procedural juncture prior to the Order.

For all these reasons, we hold that Order 218 does not apply in cases in which the time to petition for review by the state supreme court expired prior to the date of the order. For Wenger, this means that his ineffective assistance of counsel claims are procedurally defaulted and, because he has not argued any ground for excusing that default, it would appear that federal habeas review of these claims is barred.

12

Wenger maintains, however, that the Commonwealth has waived this default. In making this argument, Wenger relies on Hull v. Kyler, 190 F.3d 88 (3d Cir. 1999), but we find that case to be inapposite. In Hull, the prisoner raised the relevant claim in the Court of Common Pleas and the Superior Court, but his attorney failed to file a timely petition for allowance of appeal to the state supreme court. 190 F.3d at 98. Subsequently, however, in a collateral proceeding, "Hull sought, and received, from the . . . Court of Common Pleas leave to file a petition for allowance of appeal nunc pro tunc to the state supreme court" from the prior Superior Court decision that had rejected the claim on the merits. Id. (emphasis in original)."The leave was granted on the basis of his post-conviction counsel's ineffectiveness in failing to timely file such a petition originally or to notify Hull of this failure in a timely fashion." Id. The order granting this relief was never reversed by the state courts; Hull filed a nunc pro tunc petition for allowance of appeal; and the state supreme court denied that petition without comment. Id . We held that the granting of leave to file the petition nunc pro tunc constituted a waiver by the state courts of the prior procedural default. Id. at 98-99.

Wenger argues that, if he procedurally defaulted his ineffective assistance of counsel claims when he failed to file a timely petition for allowance of appeal from the 1991 decision of the Superior Court, the Court of Common Pleas waived that default in his subsequent PCRA proceeding when the court dismissed that petition, not on the ground that the ineffective assistance claims had been defaulted or waived, but on the ground that they had been "previously litigated." Appellant's Br. at 18. We reject this argument.

Under the PCRA, a petitioner must prove that an "allegation of error has not been previously litigated or waived." 42 Pa. Cons. Stat. Ann. S 9543(a)(3). An allegation is considered to have been "previously litigated" if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue" or the allegation "has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa. Cons. Stat. Ann. SS 9544(a)(2)and (3).

Thus, the holding of the Court of Common Pleas in Wenger's PCRA proceeding that his ineffective assistance of counsel claims had been "previously litigated" merely signified that the Superior Court ("the highest appellate court in which the petitioner could have had review as a matter of right") had ruled on the merits of those claims (as it indisputably had in the earlier appeal in the PCHA proceeding) and/or that the claims had "been raised and decided in a proceeding collaterally attacking the conviction or sentence" (which also plainly occurred in the earlier, PCHA proceeding). Although the Court of Common Pleas did not also say that the claims had been "waived," the court did not say that they had not been "waived," and in any event, the question whether the claims were "waived" within the meaning of the PCRA is analytically distinct from the question whether they were exhausted or procedurally defaulted for federal habeas purposes. In Hull , as we have noted, the procedural default was found to have been waived because a state court in effect granted him leave to cure his prior default, and he did so. Nothing comparable happened here.

We therefore hold that Wenger's ineffective assistance of counsel claims, although exhausted, have been procedurally defaulted and may not be raised in this S 2254 proceeding.

III.

The final question that we must consider is whether we may affirm the dismissal of Wenger's Due Process/Eighth Amendment claim. As noted, the District Court dismissed Wenger's entire petition, including this claim, on the ground that it was "mixed," but this was incorrect. As we said in Toulson:

> A petition containing unexhausted but procedurally barred claims in addition to exhausted claims, is not a mixed petition requiring dismissal under Rose . Although the unexhausted claims may not have been presented to the highest state court, exhaustion is not possible because the state court would find the claims procedurally defaulted.

14

> The district court may not go to the merits of the
> barred claims, but must decide the merits of the claims
> that are exhausted and not barred.

987 F.2d at 987 (internal citations omitted).

The Commonwealth contends, however, that Wenger's
Due Process/Eighth Amendment claim was never fairly
presented to the state courts because it was not raised on
direct appeal or in the PCHA proceeding and was not
presented to the Court of Common Pleas in an adequate
way in the PCRA proceeding. We cannot agree.

We interpret the decision of the Court of Common Pleas
in the PCRA proceeding as rejecting this claim on the merits.2
The claim was next raised on appeal to the Superior Court,
and the Superior Court affirmed without addressing this
issue. We must therefore assume that the decision of the
Superior Court rests on the same ground as that of the
Court of Common Pleas. See Ylst v. Nunnemaker , 501 U.S.
797, 803 (1991) ("Where there has been one reasoned state
judgment rejecting a federal claim, later unexplained orders
upholding that judgment or rejecting the same claim rest
upon the same ground.") Finally, the issue was raised in a
timely petition for allowance of appeal to the state supreme
court, and that court denied review without comment. As a
result, the claim was exhausted. See Ylst, 501 U.S. at 801
("If the last state court to be presented with a particular
federal claim reaches the merits, it removes any bar to
federal-court review that might otherwise have been
available.").

We therefore hold that this claim is cognizable under
S 2254 and should be considered by the District Court on
remand. Needless to say, we express no view regarding the
merits of the claim. We thus reverse the decision of the
District Court dismissing Wenger's petition in its entirety
and remand for further proceedings consistent with this
opinion.

_____

2. As noted, after rejecting Wenger's ineffective assistance claims as
"nothing more than a reworked version of a previously litigated claim,"
the court addressed what we understood as the equivalent of the Due
Process/Eighth Amendment claim as an "[a]dditional[ ]" claim. App. 66.

15

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

16