324 F.3d 838
 Frank E. Adams, Petitioner-Appellant, V. Flora J. Holland, Warden, Respondent-Appellee.
 No. 00-6575.
 United States Court of Appeals, Sixth Circuit.
 Argued: September 11, 2002.
 Decided and Filed: April 4, 2003.
 Petition for Rehearing Denied En Banc: August 27, 2003. Pursuant to Sixth Circuit Rule 206
 
 THIS OPINION WAS WITHDRAWN FROM THE HARDBOUND VOLUME.
 ARGUED: Paul R. Bottei, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant.
 Kim R. Helper, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE DIVISION, Nashville, Tennessee, for Appellee.
 ON BRIEF: Mariah A. Wooten, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant.
 Kim R. Helper, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE DIVISION, Nashville, Tennessee, for Appellee.
 
 
 1
 Before: BOGGS and COLE, Circuit Judges; BATTANI, District Judge.*
 
 
 2
 BATTANI, District Judge.
 
 
 3
 Before the court is Petitioner-Appellant Frank Adams's appeal from the denial of his habeas petition by the Middle District of Tennessee, Honorable District Court Judge Robert L. Echols. Appellant now preserves for appeal his claim for habeas relief based on the state trial court's admission of his co-defendant Timothy Crowell's hearsay testimony at trial, arguing that the admission of that statement violated Appellant's rights under the Confrontation Clause of the U.S. Constitution. Appellee argues that Appellant has procedurally defaulted his habeas challenge on this issue by failing to argue it in front of the Tennessee Supreme Court, and alternatively, that the admission of the co-defendant's statements did not violate Appellant's constitutional rights. Appellant now appeals the District Court's ruling that his habeas claim has been procedurally defaulted. We AFFIRM.
 
 I. Factual Background
 
 4
 In February 1991, a jury in Davidson County, Tennessee, found Appellant guilty of the felony-murder of Thomas Weser and two counts of aggravated robbery, for which Appellant was sentenced to life in prison plus twenty years. In October 1992, the Tennessee Court of Criminal Appeals affirmed those convictions. Appellant then applied for permission to appeal to the Tennessee Supreme Court, but did not specifically mention the Confrontation Clause issue before this court in that application, which was denied in June 1998.
 
 
 5
 In June 1999, Appellant filed his habeas petition before the District Court. The Magistrate Judge recommended that all of Appellant's habeas claims be dismissed except for his Confrontation Clause claim. The District Court agreed with the Magistrate Judge on all of the issues except for the Confrontation Clause issue; on the latter claim, the District Court found that Appellant had procedurally defaulted the claim by failing to bring it before the Tennessee Supreme Court in his application for permission to appeal. Appellant asked for a Certificate of Appealability from both the District Court and this court, and was denied both requests. He then filed a petition for Rehearing with this court on June 21, 2001. While this petition was pending, the Tennessee Supreme Court promulgated Tennessee Supreme Court Rule 39, which Appellant argues removes the procedural default assessed against his Confrontation Clause claim. Accordingly, on August 16, 2001, this court vacated the denial of Appellant's certificate of appealability, and granted a certificate on the following two issues: 1) whether, in light of Tennessee Supreme Court Rule 39, Appellant's Confrontation Clause claim is procedurally defaulted; and 2) if not, whether the admission of the co-defendant's statements violated Appellant's rights under the Confrontation Clause.
 
 II. Discussion
 
 6
 This court reviews a district court's legal conclusions in a habeas proceeding de novo and its factual findings for clear error. E.g., Miller v. Francis, 269 F.3d 609, 613 (6th Cir.2001).
 
 A. Procedural Default
 
 7
 Appellant acknowledges that, were it not for Rule 39, his claim would be procedurally defaulted because review by a state supreme court is normally an "available state remedy" that must be exhausted before a federal habeas petition can be filed, even if the state supreme court has only discretionary appeals. O'Sullivan v. Boerckel, 526 U.S. 838, 847-48 (1999). Appellant concedes that he did not bring his Confrontation Clause issue before the Tennessee Supreme Court. Appellant argues, however, that in passing Rule 39, the Tennessee Supreme Court changed the landscape of exhaustion law in Tennessee. The rule reads in relevant part:
 
 
 8
 In all appeals from criminal convictions or post-conviction relief matters from and after July 1, 1967, a litigant shall not be required to petition for rehearing or to file an application for permission to appeal to the Supreme Court of Tennessee following an adverse decision of the Court of Criminal Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the Court of Criminal Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies available for that claim.
 
 
 9
 Tenn. Sup. Ct. R. 39. Specifically, Appellant argues that Rule 39 removes review by the Tennessee Supreme Court as an "available state remedy" for any habeas claim after July 1, 1967, and that his Confrontation Clause issue has therefore not been procedurally defaulted by his failure to bring it before the Tennessee Supreme Court.
 
 
 10
 Appellee does not contest that Rule 39 purports to remove Tennessee Supreme Court review as an available state remedy for habeas purposes. Instead, Appellee argues that Rule 39 violates the Supremacy Clause of the U.S. Constitution because it conflicts with federal law as established in O'Sullivan. Appellee contends that, because discretionary review is still technically available in the Tennessee Supreme Court, O'Sullivan controls, and Rule 39 cannot displace federal law on the question of what counts as available state remedies. Appellee's alternative argument is that, even if Rule 39 did remove Tennessee Supreme Court review as an available state remedy, it did not do so "retroactively" and therefore Appellant's habeas claim is still procedurally defaulted. Specifically, Rule 39 was promulgated after Appellant's habeas petition had been submitted, and was promulgated even after Appellant had applied for a rehearing on the denial of his certificate of appealability. Appellee maintains that Rule 39, at most, removed Tennessee Supreme Court review for habeas petitions brought after its promulgation, and that Appellant's habeas claim therefore remains procedurally defaulted.
 
 
 11
 1. Rule 39 has made Tennessee Supreme Court review "unavailable"
 
 
 12
 The Supreme Court has recently held that even discretionary appeals by a state supreme court are available state remedies that must be exhausted for habeas relief. O'Sullivan, 526 U.S. at 847-48. The O'Sullivan Court, however, explicitly excepted from its holding cases in which the state has explicitly disavowed state supreme court review as an "available state remedy." Id. at 847. In this regard, the Supreme Court stated that "we note that nothing in our decision today requires the exhaustion of any specific state remedy when a State has provided that that remedy is unavailable." Id. The Supreme Court recognized that federal law does not prohibit a state from deciding for itself the availability of a particular state remedy. "The exhaustion doctrine, in other words, turns on an inquiry into what procedures are `available' under state law ... there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available." Id. at 847-48. Rule 39 clearly removed Tennessee Supreme Court review as an antecedent for habeas purposes. By its terms, Rule 39 dictates that once the Court of Criminal Appeals has denied a claim of error, "the litigant shall be deemed to have exhausted all available state remedies available for that claim." Tenn. Sup. Ct. R. 39.
 
 
 13
 Appellee argues that Rule 39 has not technically made Tennessee Supreme Court review unavailable, however, since litigants have not been explicitly prohibited from appealing to the state supreme court. According to Appellee, Rule 39 would only have made Tennessee Supreme Court review "unavailable" if it had used explicit statements such as "a litigant shall hereby not be allowed to petition this Court for review," or "this Court will no longer, under any circumstances, review decisions of the Court of Criminal Appeals rejecting claims of error." Appellee's argument, however, fails to grasp the meaning of the word "available" as it is used in O'Sullivan, and instead dwells upon a hypertechnical interpretation of that term. Appellee's misinterpretation is revealed by the O'Sullivan Court's examples of what might constitute making state supreme court review unavailable: namely, rules passed by the Supreme Courts of South Carolina and Arizona. O'Sullivan, 526 U.S. at 847. Although the O'Sullivan majority declined to rule definitively on whether those rules would change the law on exhaustion and procedural default, it did recognize that the rules were trying to make state supreme court review unavailable in those states for habeas purposes. Id. The South Carolina Supreme Court, for example, declared:
 
 
 14
 We recognize that criminal and post-conviction relief litigants have routinely petitioned this Court for writ of certiorari upon the Court of Appeals' denial of relief in order to exhaust all available state remedies. We therefore declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.
 
 
 15
 In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 321 S.C. 563, 564 (1990) (emphasis added) (footnote omitted). The O'Sullivan Court considered this South Carolina rule as trying to remove South Carolina Supreme Court review as an available state remedy for habeas purposes, but reserved judgment as to whether the rule actually succeeded in doing so. O'Sullivan, 526 U.S. at 847-48.
 
 
 16
 It is worth noting that the highlighted language is essentially identical to that in Rule 39. Specifically, neither rule completely removes state supreme court review as an option for litigants; indeed, the South Carolina rule explicitly allows for the presentation of the claim to its Supreme Court. Both rules, however, establish that Supreme Court review is no longer part of the normal course of review for criminal appeals, and is not necessary for exhaustion of "all available state remedies." See also State v. Sandon, 161 Ariz. 157, 158 (1989) ("Once the defendant has been given the appeal to which he has a right [i.e., in the Court of Appeals], state remedies have been exhausted") (internal quotations omitted). The O'Sullivan Court pointed out that, contrary to Appellee's assertions, technically available remedies are still not "available" for habeas purposes when "those remedies are alternatives to the standard review process." O'Sullivan, 526 U.S. at 844 (citing Wilwording v. Swenson, 404 U.S. 249, 249-50 (1971)). Instead, when remedies are taken outside of the normal criminal review process, those remedies become "extraordinary:" technically available to the litigant but not required to be exhausted. Id.
 
 
 17
 Our view of the O'Sullivan opinion is bolstered by the concurring opinion of Justice Souter from that case. First, Justice Souter, who joined the majority, also cited the South Carolina rule as an example of a state making its Supreme Court review an "unavailable" state remedy, and echoed the majority opinion's citation of Wilwording. O'Sullivan, 526 U.S. at 849-50. Justice Souter made two further crucial observations about the majority opinion. First, Justice Souter explained that under the majority opinion, a state supreme court did not have to "be subjected to constant applications for a form of discretionary review that the State wishes to reserve for truly extraordinary cases, or else be forced to eliminate that kind of discretionary review." Id. at 850. In other words, again contrary to Appellee's argument, a state supreme court can preserve discretionary review of criminal appeals while still dictating that review to be "unavailable" for habeas purposes. Second, Justice Souter stated his understanding "that we leave open the possibility that a state prisoner is likewise free to skip a procedure even when a state court has occasionally employed it to provide relief, so long as the State has identified the procedure as outside the standard review process and has plainly said that it need not be sought for the purpose of exhaustion." Id.
 
 
 18
 Thus, the majority and concurring opinions from O'Sullivan lead us to believe that Rule 39 rendered Tennessee Supreme Court review "unavailable" in the context of habeas relief. Moreover, the language quoted above from O'Sullivan also indicates that this decision by the Tennessee Supreme Court does not violate the Supremacy Clause. A state law or rule violates the Supremacy Clause only if it explicitly conflicts with federal law. CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663 (1993); accord Southeastern Oakland County Res. Recovery Auth. v. City of Madison Heights, 5 F.3d 166, 168 (6th Cir.1993). As quoted above, the Supreme Court has not yet explicitly decided whether a rule like Rule 39 would remove state supreme court review for habeas purposes. O'Sullivan, 526 U.S. at 847-49. This statement alone shows that there is no "actual conflict" between Rule 39 and federal law. Even beyond this, however, the language quoted above from O'Sullivan clearly shows the Supreme Court's view that the question of what constitutes the body of "available state remedies" is one of state law, not one of federal law: "there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available ..." Id. (emphasis added).
 
 
 19
 Finally, it should be pointed out that every other lower court that has considered, post-O'Sullivan, the effect of a rule like Rule 39 has held that such a rule permissibly eliminates state supreme court review as an available state remedy that must be exhausted. The Ninth Circuit found that O'Sullivan implicitly overruled its earlier position that Arizona could not remove state supreme court review as an available state remedy to be exhausted. Swoopes v. Sublett, 196 F.3d 1008, 1009-11 (9th Cir.1999). Similarly, the Eighth Circuit held that a Missouri rule clearly stated its intent to place state supreme court review outside the set of available state remedies preceding habeas relief. Randolph v. Kemna, 276 F.3d 401, 404 (8th Cir.2002); see also Mattis v. Vaughn, 128 F. Supp.2d 249, 256-61 (E.D.Pa. 2001). Appellee's attempt to rely on Rodriguez v. Scillia, 193 F.3d 913, 917 (7th Cir.1999), is unsuccessful because Illinois has a discretionary appeal system without a rule like the one passed in Arizona, Pennsylvania, Missouri or Tennessee, and so O'Sullivan still applies there.
 
 
 20
 2. Rule 39 does not operate retroactively to prevent procedural default by Appellant in this case
 
 
 21
 A closer question is presented as to whether Rule 39 applies "retroactively" to Appellant's case in particular. Two Circuit Courts have considered whether a rule like Rule 39 can apply to habeas petitions filed before their promulgation, and have come to opposite conclusions. Dealing with the Missouri rule, the Eighth Circuit rejected the State's argument that "because the amendment to Rule 83.04 has an effective date of July 1, 2002, its invocation" did not help the petitioner, who filed for habeas relief before that date. Randolph, 276 F.3d at 404. The Eighth Circuit based its conclusion on the Rule's language, which indicated that it was not changing Missouri law to exclude state supreme court review as an available remedy, but rather was clarifying what had already been Missouri law. Id. "The order recites that `In order to state the existing law in Missouri, the Court notes that transfer of a case ... to this Court ... is not part of the standard review process for the purposes of federal habeas corpus review.'" Id. The Randolph court reasoned that because the announcement of the Missouri rule purported to clarify the existing law, rather than change it, the rule had applied when the petitioner had filed for habeas relief, and so was not even being applied retroactively in that case. Id.
 
 
 22
 On the other hand, the Third Circuit refused to apply the Pennsylvania rule, passed in May 2000, to remove the procedural default from a habeas petition filed before that date. Wenger v. Frank, 266 F.3d 218, 225-226 (3rd Cir.2001). The Third Circuit based its conclusion largely on textual considerations. First, it looked to the language of the Pennsylvania rule, which announced, "AND NOW, this 9th day of May, 2000... we hereby declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal ... in order to be deemed to have exhausted all available state remedies ... This Order shall be effective immediately." Id. at 224-25 (internal quotations omitted). The Third Circuit found that language to allow application of the rule only on or after May 9, 2000, because it announced that it would be "effective immediately," not as of some prior date. Id. at 225. Based on that same language, the Wenger court also found that the Pennsylvania rule had amended Pennsylvania law, and that prior to its passage, state supreme court review had been an available state remedy in Pennsylvania. Id. at 226. This, of course, stands in contrast to the language of the Missouri rule, which established that it was clarifying existing law rather than creating different law on the subject.
 
 
 23
 Superficially, the instant case seems more similar to the one in Randolph than in Wenger because Rule 39 announced its applicability to "all appeals from criminal convictions or post-conviction relief matters from and after July 1, 1967." Tenn. Sup. Ct. R. 39. However, Rule 39 does not state clearly that it is merely elucidating existing Tennessee law, unlike the Missouri rule, which stated explicitly that it only clarified Missouri law. Indeed, federal courts interpreting Tennessee law have, until the passage of Rule 39, always required appeal to the Tennessee Supreme Court as part of the habeas exhaustion requirement, revealing that Rule 39 changed Tennessee law rather than merely clarifying it. E.g., Stubbs v. Bomar, 321 F.2d 535, 536 (6th Cir.1963); Jones v. Jones, 76 F. Supp.2d 850, 856-57 (E.D.Tenn. 1999); Abdur'Rahman v. Bell, 999 F. Supp. 1073, 1080 (M.D.Tenn. 1998), vacated on other grounds by 226 F.3d 696 (6th Cir.2000); Cole v. Campbell, 703 F. Supp. 657, 659 (M.D.Tenn. 1988); Layman v. Russell, 300 F. Supp. 430, 431 (E.D.Tenn. 1969). In other words, prior to Rule 39, the law of Tennessee was apparently that Tennessee Supreme Court review was an available remedy, so unlike the Missouri rule, Rule 39 should not be applied retroactively.
 
 
 24
 The Third Circuit invoked policy considerations to bolster its textual conclusion, surmising that allowing retroactive application of the Pennsylvania rule would not serve the rule's purpose of easing the burden on the state supreme court's docket because the state supreme court had already passed on those petitions filed before the rule. Id. at 225-26 (citing Mattis, 128 F. Supp.2d at 262). Thus, the rule would merely serve to burden the federal courts with erstwhile dormant habeas cases, without providing any corresponding benefit to the state court system. Mattis, 128 F. Supp.2d at 262. The Wenger/Mattis policy arguments against retroactive application are as persuasive to this court as the textual arguments. Rules like Rule 39 allow state supreme courts to lessen their workload by largely avoiding the onslaught of criminal appeals. Applying Rule 39 retroactively, however, does not help to lessen any burden on the Tennessee Supreme Court because the cases that would be reached by retroactive application are not threats to burden the Tennessee Supreme Court's docket. For example, Appellant's case here cannot be placed back in front of the Tennessee Supreme Court, so application of Rule 39 to his case would not result in any efficiency gain such as that envisioned by the O'Sullivan Court. Instead, retroactive application simply threatens to burden federal courts with long-dormant habeas cases, with no corresponding benefit to the state court systems. Wenger, 266 F.3d at 225-26; Mattis, 128 F. Supp.2d at 262. In short, this court does not apply Rule 39 retroactively to Appellant's case, and therefore finds that his Confrontation Clause claim is procedurally defaulted.
 
 B. The Confrontation Clause claim
 
 25
 Also before the court are Appellant's Confrontation Clause claim and his request that the court add the transcript of the closing arguments to the appellate record when considering that claim. Because we hold that Appellant's Confrontation Clause issue is procedurally defaulted, we do not reach these other two issues.
 
 III. Conclusion
 
 26
 For the reasons stated above, we AFFIRM the judgment of the District Court denying Appellant's habeas petition.