[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 13, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-14292

_____

D. C. Docket No. 03-00253-CV-WTM-4

NOEL JUDAS HILLS,

Petitioner-Appellant,

versus

ANTHONY WASHINGTON,
Warden,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(March 13, 2006)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

In Nelson v. Schofeld, 371 F.3d 768 (11th Cir. 2004), this Court applied

O'Sullivan v. Boerckel, 526 U.S. 838, 119 S. Ct. 1728 (1999), to Georgia's system

of direct appellate review to conclude that a defendant must petition for certiorari

to the Georgia Supreme Court in order to exhaust his state remedies and thereby

avoid a procedural default. The O'Sullivan decision left open the possibility that a

state's highest court might, in effect, opt out of the rule of that case by clearly

stating that it did not want the rule applied to cases from that state. See O'Sullivan,

526 U.S. at 847–48, 119 S. Ct. at 1734; id. at 849, 119 S. Ct. at 1734 (Souter, J.,

concurring); id. at 861–62, 119 S. Ct. at 1740–41 (Stevens, J., joined by Ginsburg

and Breyer, JJ., dissenting); id. at 864, 119 S. Ct. at 1741–42 (Breyer, J., joined by

Stevens and Ginsburg, JJ., dissenting). At the time we decided Nelson, Georgia's

Supreme Court had not attempted to opt out of the O'Sullivan rule, but since then

it has.

In November 2004, the Georgia Supreme Court amended its certiorari

review rule to read, in pertinent part:

> A review on certiorari is not a right. A petition for the
> writ will be granted only in cases of great concern,
> gravity, or importance to the public. In all appeals from
> criminal convictions, a litigant shall not be required to
> petition for rehearing and certiorari following an adverse
> decision of the Court of Appeals in order to be deemed to
> have exhausted all available state remedies respecting a
> claim of error. When the claim has been presented to the

2

Court of Appeals, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.

Ga. Sup. Ct. R. 40 (as amended on Nov. 16, 2004). A January 5, 2005 amendment moved the second sentence of the quoted paragraph to the end but made no substantive change.

The O'Sullivan opt out language was not in the Georgia Supreme Court's Rule 40 when Noel Hills, the federal habeas petitioner before us, went through the direct appeal process. During that process, Hills presented to the Georgia Court of Appeals four of the federal constitutional claims that he is attempting to raise in his federal habeas petition. He did not, however, seek certiorari in the Georgia Supreme Court from the Georgia Court of Appeals decision rejecting those claims on the merits, Hills v. State, No. A01A0225 (Ga. Ct. App. June 5, 2001) (unpublished). On the basis of Hills' failure to seek certiorari alone, and consistent with our Nelson decision, the district court ruled that he had procedurally defaulted the four federal constitutional claims even though he had raised them in the state court of appeals. When it dismissed Hill's petition on O'Sullivan grounds on July 28, 2004, the district court did not have an opportunity to consider the effect of Georgia's Rule 40 amendments, which would not be adopted for three-and-a-half more months.

3

Hills contends that the Georgia Supreme Court's statements in Rule 40 take that state out of O'Sullivan's sphere of influence and entitle him to consideration of his claims on the merits. We need not decide the issues raised by Hills' contention, because the Georgia Attorney General has waived any reliance on a procedural bar defense in these circumstances.

Acting through their attorneys general, states can waive procedural bar defenses in federal habeas proceedings. See Gray v. Netherland, 518 U.S. 152, 165–66, 116 S. Ct. 2074, 2082 (1996); Moon v. Head, 285 F.3d 1301, 1318–19 (11th Cir. 2002) (Carnes, J., joined by Hull, J., concurring); Romine v. Head, 253 F.3d 1349, 1364 (11th Cir. 2001); Esslinger v. Davis, 44 F.3d 1515, 1527–29 (11th Cir. 1995). While there are some restrictions on a state's implicit waiver of a procedural bar defense, see McNair v. Campbell, 416 F.3d 1291, 1303–07 (11th Cir. 2005), the waiver here is anything but implicit.

The Georgia Attorney General filed two briefs in this Court, one in response to Hills' pro se brief and the other in response to the brief filed by counsel we appointed to represent Hills in the appeal. In the first brief he filed, the attorney general represented that: "In the district court Respondent did not contest exhaustion of these claims or assert they were defaulted due to Petitioner's failure to seek certiorari. Instead, Respondent urged the district court to determine

4

whether the Georgia Court of Appeals' merits adjudications of these particular grounds should be given deference" under the deferential standard set out in 42 U.S.C. § 2254(d). Brief of Appellee at 11–12 (Feb. 24, 2005). Likewise, in that same brief the attorney general urged us to conclude that the petitioner's claims "are not defaulted and either remand this case to the district court for a § 2254(d) analysis or conduct such an analysis and deny relief." Id. at 19.

The Georgia Attorney General did not vary from that position in the second brief he filed, again insisting that there was no procedural bar and that what we should do is either decide the claims on the merits, with proper deference under § 2254(d), or remand them to the district court for it to do so. Brief of Appellee at 5–6 (Oct. 3, 2005). As for the O'Sullivan rule, the attorney general's briefs explain his position that: 1) it is unworkable in Georgia because state certiorari petitions are kept by the state supreme court for only one year, rendering it difficult for the State to show that any related procedural bar is consistently and regularly applied, id. at 7–8; 2) it is inapplicable because Georgia's courts do not apply procedural bars in state collateral review based upon the failure of a petitioner to have sought certiorari review of the claims on direct appeal, id. at 8–9; and 3) the amendment to Rule 40 shows that the Georgia Supreme Court does not want the increased certiorari filings that the O'Sullivan rule will cause, id. at 9. As for our

5

Nelson decision, the state attorney general's position is, in essence, that the amendment to Rule 40 has overtaken it.

We need not decide how we would have decided this case had the attorney general taken different positions on these questions, and we do not imply how the questions should be decided if they arise in cases from some other state. All we decide is that in federal habeas proceedings the Georgia Attorney General has the authority to speak for the Georgia court system insofar as its federalism interests are concerned. He can waive potential procedural bar defenses. He has done so here.

We do note the footnoted position in one of the Georgia Attorney General's briefs indicating his position that it is still a procedural default for a state habeas corpus petitioner not to file an application for a certificate of probable cause in the Georgia Supreme Court to appeal the denial of relief by the trial-level court. Brief of Appellee at 8–9 n.3 (Oct. 3, 2005) That kind of default not being involved in this case, any issues concerning it are for another day.

The district court's judgment dismissing Hills' petition for a writ of habeas corpus on procedural bar grounds is VACATED. The case is REMANDED for the district court to decide, with proper regard to the dictates of 28 U.S.C. § 2254(d),

6

the four federal constitutional claims that the Georgia Court of Appeals decided on the merits during its direct review.

CARNES, Circuit Judge, concurring:

I fully concur in the Court's opinion in this case, which should come as no surprise to my two colleagues since, as they know, I wrote it. That opinion says all that is necessary to dispose of this appeal, while this one contains some additional thoughts that are offered for any worth they may have in a future case where similar O'Sullivan v. Boerckel, 526 U.S. 838, 119 S. Ct. 1728 (1999), issues are not rendered academic by waiver. See Evans v. Stephens, 407 F.3d 1272, 1284 (11th Cir. 2005) (Carnes, J., concurring) (acknowledging that dicta is not binding but offering additional thoughts "with the hope that this will be one of those occasions in which dicta serves a useful purpose").

The Georgia Attorney General's waiver of the procedural default defense arising from the O'Sullivan issue is not compelled by any binding legal precedent. A state supreme court's adoption of a rule or order, like Georgia's amended Rule 40, presents two questions of first impression in this circuit. The first question is whether an expression like that in Rule 40 can actually prevent application of the holding in O'Sullivan in any case. Four justices—three who dissented from the decision and one who concurred in it—did express the view in O'Sullivan that state supreme courts should not be forced to accept the benefit (more error-correcting opportunity) and the burden (more work) that flow from that decision.

8

O'Sullivan, 526 U.S. at 849, 119 S. Ct. at 1734–35 (Souter, J., concurring); id. at 861–62, 119 S. Ct. at 1740–41 (Stevens, J., joined by Ginsburg and Breyer, JJ., dissenting); id. at 864, 119 S. Ct. at 1741–42 (Breyer, J., joined by Stevens and Ginsburg, JJ., dissenting). There is certainly something to be said for that view, and those four justices said it.

The O'Sullivan majority opinion, however, does not explicitly give state high courts the right to say, in effect, "thanks, but no thanks" for the rule announced in that decision. The opinion does acknowledge that the higher number of certiorari petitions resulting from the decision may be an "unwelcome burden on state supreme courts [that] disserves the comity interests underlying the exhaustion doctrine," and it says that "there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available." O'Sullivan, 526 U.S. at 847–48, 119 S. Ct. at 1733–34 (emphasis added). But only if "not available" is read to convey something other than its plain meaning does a certiorari remedy that was available to be used become one that was not available simply because no attempt was made to use it.

Notwithstanding that difficulty, some courts of appeal have decided that state supreme courts may by rule or order insulate petitioners convicted in their court systems from the effect of the O'Sullivan decision by simply declaring that

9

what is available as a matter of state procedural law should be treated as unavailable by federal courts in habeas cases. E.g., Lambert v. Blackwell, 387 F.3d 210, 233–34 (3d Cir. 2004), cert. denied, 125 S. Ct. 2516 (2005) (Pennsylvania case); Adams v. Holland, 330 F.3d 398, 401–03 (6th Cir. 2003) (Tennessee case); Randolph v. Kemna, 276 F.3d 401, 404–05 (8th Cir. 2002) (Missouri case); Swoopes v. Sublett, 196 F.3d 1008, 1009–10 (9th Cir. 1999) (per curiam) (Arizona case). None of those decisions, however, face up to the extraordinary nature of a decision permitting state supreme courts to opt out of the O'Sullivan rule.

We are not talking about the impact on a federal habeas proceeding of a change in a state's procedures, an impact that would be gauged and decided by federal courts. Instead, we are talking about letting a state court decide the federal habeas effect of a petitioner bypassing an unchanged state procedure. Georgia's amended Rule 40 is a good example. It does not purport to change in any way the scope of the certiorari procedure available to defendants on direct appeal in that state. It does not purport to change the effect that not filing a certiorari petition on direct appeal will have when the petitioner gets to the state collateral proceeding. The Georgia Attorney General assures us that there has been no change in the effect that failing to seek certiorari has on state collateral review—Georgia law

10

remains as it always has been in that regard. Brief of Appellee at 8 & 10 (Oct. 3, 2005)

The only change the amendment to Rule 40 attempts to make is contained in its two-sentence pronouncement about federal habeas law:

> In all appeals from criminal convictions, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. When the claim has been presented to the Court of Appeals, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.

Ga. Sup. Ct. R. 40 (as amended on Nov. 16, 2004). That reads more like the punch line from a federal court's decision in a habeas case than it does a state court rule, and with good reason. It is the punch line of a decision about federal habeas law, a decision the Georgia Supreme Court is making. The decision is about exhaustion of state remedies. Exhaustion of state remedies is not a state law concept; it is a defense in federal court to a federal habeas corpus petition. Never before have federal courts delegated to state courts the authority to decide what federal habeas law will be, how a given set of procedural facts will be treated in federal court. None of the federal court decisions allowing state supreme courts to control the scope of the O'Sullivan rule by proclamation appear to recognize what a singular development in habeas law this is; they certainly do not discuss the ramifications

11

of it.  This kind of delegation of federal habeas rulemaking power to state supreme courts may be proper and appropriate, but the full implications of it ought to be weighed carefully given the extraordinary nature of what is being done.

Even if  O'Sullivan opt outs are permissible and valid in general, there is the additional question of whether a provision like Georgia's Rule 40 ought to be given federal habeas effect in cases that had already completed the state appellate process at the time the rule was adopted.   In this case Hills insists that the issue is a state law question of retroactivity which depends on the intent of the Georgia Supreme Court when it issued Rule 40.   I doubt that.  But see Randolph v. Kemna, 276 F.3d at 404–05 (holding that Missouri Supreme Court rule effective July 2002 applied to habeas petition filed several years before adoption of the rule because it made clear "what the law of Missouri ha[d] been and set[] forth what the law of Missouri will continue to be").  The question would seem to be less what the state court intended for state law to be when it adopted the rule and more what the federal habeas effect of the rule is.  As Judge Alito explained for the Third Circuit, the federal habeas question in these circumstances is whether the certiorari remedy was available when the petitioner was in the state appellate process, not whether it is available now.  Wenger v. Frank, 266 F.3d 218, 226 (3d Cir. 2001).  The

availability of a remedy in the past is an objective historical fact that cannot be retroactively altered.  Id.

Not only that, but the purposes of allowing a state supreme court to elect out of the O'Sullivan rule would not be served by extending the effect of that election to past cases.  Id. at 225–26.  By electing out of the application of the O'Sullivan rule, a state supreme court removes the federal habeas-based incentive a petitioner has for filing certiorari petitions in that court during the direct appeal. The purpose of removing that incentive is to reduce the number of certiorari petitions filed, which will lessen the workload of the state supreme court and cut out the delay resulting from the filing of those petitions.  Id.  ("Orders of this type are based on the view that requiring state prisoners to file petitions for discretionary review in order to pave the way for federal habeas petitions does little good (because so few petitions for discretionary review are granted) but imposes a burden on overworked state supreme courts and produces pointless delay.").

The twin purposes of avoiding additional work for state supreme courts and avoiding needless delay during the direct appeal process cannot possibly be achieved in cases that are already past the point of direct appeal and out of the state court system.  Although not concerned with state court certiorari petitions, Omar Khayyam got it right nearly a millennium ago when he wrote that:  "The Moving

13

Finger writes; and, having writ,/ Moves on: nor all your Piety nor Wit/ Shall lure it back to cancel half a Line,/ Nor all your Tears wash out a Word of it." Rubaiyat of Omar Khayyam, st. 71 (Edward FitzGerald trans., 4th ed. 1879).  State rule amendments, like piety and wit and tears, cannot change the past.  Any certiorari petitions filed in a state supreme court before that court issues an anti-O'Sullivan rule or order were filed; any that were not, were not.  Because burdens already borne and delays already caused cannot be retroactively altered, no purpose would be served by giving  retroactive effect to this kind of state court rule.

I agree with the Court that these O'Sullivan issues are not presented for decision in this case because the state has waived the procedural bar defense.  They can and should be given the attention they deserve in any future case where they are properly presented.