RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0152A (6th Cir.)
File Name: 03a0152a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

FRANK E. ADAMS,
     *Petitioner-Appellant,*

v.            No. 00-6575

FLORA J. HOLLAND, Warden,
     *Respondent-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 99-00519—Robert L. Echols, Chief District Judge.

Argued: September 11, 2002

Decided and Filed: May 20, 2003

Before: BOGGS and COLE, Circuit Judges; BATTANI,
District Judge.*

_____

## COUNSEL

**ARGUED:** Paul R. Bottei, FEDERAL PUBLIC
DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant.
Kim R. Helper, OFFICE OF THE ATTORNEY GENERAL,

_____

\* The Honorable Marianne O. Battani, United States District Judge for
the Eastern District of Michigan sitting by designation.

---

CRIMINAL JUSTICE DIVISION, Nashville, Tennessee, for
Appellee. **ON BRIEF:** Mariah A. Wooten, FEDERAL
PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for
Appellant. Kim R. Helper, OFFICE OF THE ATTORNEY
GENERAL, CRIMINAL JUSTICE DIVISION, Nashville,
Tennessee, for Appellee.

_____

## AMENDED OPINION

_____

BATTANI, District Judge. Before the court is Petitioner-
Appellant Frank Adams's appeal from the denial of his
habeas petition by the Middle District of Tennessee,
Honorable District Court Judge Robert L. Echols. Appellant
now preserves for appeal his claim for habeas relief based on
the state trial court's admission of his co-defendant Timothy
Crowell's hearsay testimony at trial, arguing that the
admission of that statement violated Appellant's rights under
the Confrontation Clause of the U.S. Constitution. Appellee
argues that Appellant has procedurally defaulted his habeas
challenge on this issue by failing to argue it in front of the
Tennessee Supreme Court, and alternatively, that the
admission of the co-defendant's statements did not violate
Appellant's constitutional rights. Appellant now appeals the
District Court's ruling that his habeas claim has been
procedurally defaulted. We **VACATE** and **REMAND** for
further proceedings consistent with this opinion.

## I. Factual Background

In February 1991, a jury in Davidson County, Tennessee,
found Appellant guilty of the felony-murder of Thomas
Weser and two counts of aggravated robbery, for which
Appellant was sentenced to life in prison plus twenty years.
In October 1992, the Tennessee Court of Criminal Appeals
affirmed those convictions. Appellant then applied for
permission to appeal to the Tennessee Supreme Court, but did
not specifically mention the Confrontation Clause issue

before this court in that application, which was denied in June 1998.

In June 1999, Appellant filed his habeas petition before the District Court. The Magistrate Judge recommended that all of Appellant's habeas claims be dismissed except for his Confrontation Clause claim. The District Court agreed with the Magistrate Judge on all of the issues except for the Confrontation Clause issue; on the latter claim, the District Court found that Appellant had procedurally defaulted the claim by failing to bring it before the Tennessee Supreme Court in his application for permission to appeal. Appellant asked for a Certificate of Appealability from both the District Court and this court, and was denied both requests. He then filed a petition for Rehearing with this court on June 21, 2001. While this petition was pending, the Tennessee Supreme Court promulgated Tennessee Supreme Court Rule 39, which Appellant argues removes the procedural default assessed against his Confrontation Clause claim. Accordingly, on August 16, 2001, this court vacated the denial of Appellant's certificate of appealability, and granted a certificate on the following two issues: 1) whether, in light of Tennessee Supreme Court Rule 39, Appellant's Confrontation Clause claim is procedurally defaulted; and 2) if not, whether the admission of the co-defendant's statements violated Appellant's rights under the Confrontation Clause.

## II.  Discussion

This court reviews a district court's legal conclusions in a habeas proceeding de novo and its factual findings for clear error. *E.g., Miller v. Francis*, 269 F.3d 609, 613 (6th Cir. 2001).

### A.  Procedural Default

Appellant acknowledges that, were it not for Rule 39, his claim would be procedurally defaulted because review by a state supreme court is normally an "available state remedy" that must be exhausted before a federal habeas petition can be

filed, even if the state supreme court has only discretionary appeals. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999). Appellant concedes that he did not bring his Confrontation Clause issue before the Tennessee Supreme Court. Appellant argues, however, that in passing Rule 39, the Tennessee Supreme Court changed the landscape of exhaustion law in Tennessee. The rule reads in relevant part:

> In all appeals from criminal convictions or post-conviction relief matters from and after July 1, 1967, a litigant shall not be required to petition for rehearing or to file an application for permission to appeal to the Supreme Court of Tennessee following an adverse decision of the Court of Criminal Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the Court of Criminal Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies available for that claim.

Tenn. Sup. Ct. R. 39. Specifically, Appellant argues that Rule 39 removes review by the Tennessee Supreme Court as an "available state remedy" for any habeas claim after July 1, 1967, and that his Confrontation Clause issue has therefore not been procedurally defaulted by his failure to bring it before the Tennessee Supreme Court.

Appellee does not contest that Rule 39 purports to remove Tennessee Supreme Court review as an available state remedy for habeas purposes. Instead, Appellee argues that Rule 39 violates the Supremacy Clause of the U.S. Constitution because it conflicts with federal law as established in *O'Sullivan*. Appellee contends that, because discretionary review is still technically available in the Tennessee Supreme Court, *O'Sullivan* controls, and Rule 39 cannot displace federal law on the question of what counts as available state remedies. Appellee's alternative argument is that, even if Rule 39 did remove Tennessee Supreme Court review as an available state remedy, it did not do so "retroactively" and

therefore Appellant's habeas claim is still procedurally defaulted. Specifically, Rule 39 was promulgated after Appellant's habeas petition had been submitted, and was promulgated even after Appellant had applied for a rehearing on the denial of his certificate of appealability. Appellee maintains that Rule 39, at most, removed Tennessee Supreme Court review for habeas petitions brought after its promulgation, and that Appellant's habeas claim therefore remains procedurally defaulted.

    1.   Rule 39 has made Tennessee Supreme Court review "unavailable"

The Supreme Court has recently held that even discretionary appeals by a state supreme court are available state remedies that must be exhausted for habeas relief. *O'Sullivan*, 526 U.S. at 847-48. The *O'Sullivan* Court, however, explicitly excepted from its holding cases in which the state has explicitly disavowed state supreme court review as an "available state remedy." *Id.* at 847. In this regard, the Supreme Court stated that "we note that nothing in our decision today requires the exhaustion of any specific state remedy when a State has provided that that remedy is unavailable." *Id.* The Supreme Court recognized that federal law does not prohibit a state from deciding for itself the availability of a particular state remedy. "The exhaustion doctrine, in other words, turns on an inquiry into what procedures are 'available' under state law . . . there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available." *Id.* at 847-48.

Rule 39 clearly removed Tennessee Supreme Court review as an antecedent for habeas purposes. By its terms, Rule 39 dictates that once the Court of Criminal Appeals has denied a claim of error, "the litigant shall be deemed to have exhausted all available state remedies available for that claim." Tenn. Sup. Ct. R. 39.

Appellee argues that Rule 39 has not technically made Tennessee Supreme Court review *unavailable*, however, since

litigants have not been explicitly prohibited from appealing to the state supreme court. According to Appellee, Rule 39 would only have made Tennessee Supreme Court review "unavailable" if it had used explicit statements such as "a litigant shall hereby not be allowed to petition this Court for review," or "this Court will no longer, under any circumstances, review decisions of the Court of Criminal Appeals rejecting claims of error." Appellee's argument, however, fails to grasp the meaning of the word "available" as it is used in *O'Sullivan*, and instead dwells upon a hypertechnical interpretation of that term. Appellee's misinterpretation is revealed by the *O'Sullivan* Court's examples of what might constitute making state supreme court review unavailable: namely, rules passed by the Supreme Courts of South Carolina and Arizona. *O'Sullivan*, 526 U.S. at 847. Although the *O'Sullivan* majority declined to rule definitively on whether those rules would change the law on exhaustion and procedural default, it did recognize that the rules were trying to make state supreme court review unavailable in those states for habeas purposes. *Id.* The South Carolina Supreme Court, for example, declared:

> We recognize that criminal and post-conviction relief litigants have routinely petitioned this Court for writ of certiorari upon the Court of Appeals' denial of relief in order to exhaust all available state remedies. We therefore declare that in all appeals from criminal convictions or post-conviction relief matters, *a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.*

*In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 321 S.C. 563, 564 (1990) (emphasis added) (footnote omitted). The *O'Sullivan* Court considered

this South Carolina rule as trying to remove South Carolina Supreme Court review as an available state remedy for habeas purposes, but reserved judgment as to whether the rule actually succeeded in doing so. *O'Sullivan*, 526 U.S. at 847-48.

It is worth noting that the highlighted language is essentially identical to that in Rule 39. Specifically, neither rule completely removes state supreme court review as an option for litigants; indeed, the South Carolina rule explicitly allows for the presentation of the claim to its Supreme Court. Both rules, however, establish that Supreme Court review is no longer part of the normal course of review for criminal appeals, and is not necessary for exhaustion of "all available state remedies." *See also State v. Sandon*, 161 Ariz. 157, 158 (1989) ("Once the defendant has been given the appeal to which he has a right [i.e., in the Court of Appeals], state remedies have been exhausted") (internal quotations omitted). The *O'Sullivan* Court pointed out that, contrary to Appellee's assertions, technically available remedies are still not "available" for habeas purposes when "those remedies are alternatives to the standard review process." *O'Sullivan*, 526 U.S. at 844 (citing *Wilwording v. Swenson*, 404 U.S. 249, 249-50 (1971)). Instead, when remedies are taken outside of the normal criminal review process, those remedies become "extraordinary:" technically available to the litigant but not required to be exhausted. *Id.*

Our view of the *O'Sullivan* opinion is bolstered by the concurring opinion of Justice Souter from that case. First, Justice Souter, who joined the majority, also cited the South Carolina rule as an example of a state making its Supreme Court review an "unavailable" state remedy, and echoed the majority opinion's citation of *Wilwording*. *O'Sullivan*, 526 U.S. at 849-50. Justice Souter made two further crucial observations about the majority opinion. First, Justice Souter explained that under the majority opinion, a state supreme court did not have to "be subjected to constant applications for a form of discretionary review that the State wishes to reserve for truly extraordinary cases, or else be forced to

eliminate that kind of discretionary review." *Id.* at 850. In other words, again contrary to Appellee's argument, a state supreme court can preserve discretionary review of criminal appeals while still dictating that review to be "unavailable" for habeas purposes. Second, Justice Souter stated his understanding "that we leave open the possibility that a state prisoner is likewise free to skip a procedure even when a state court has occasionally employed it to provide relief, so long as the State has identified the procedure as outside the standard review process and has plainly said that it need not be sought for the purpose of exhaustion." *Id.*

Thus, the majority and concurring opinions from *O'Sullivan* lead us to believe that Rule 39 rendered Tennessee Supreme Court review "unavailable" in the context of habeas relief. Moreover, the language quoted above from *O'Sullivan* also indicates that this decision by the Tennessee Supreme Court does not violate the Supremacy Clause. A state law or rule violates the Supremacy Clause only if it explicitly conflicts with federal law. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993); *accord Southeastern Oakland County Res. Recovery Auth. v. City of Madison Heights*, 5 F.3d 166, 168 (6th Cir. 1993). As quoted above, the Supreme Court has not yet explicitly decided whether a rule like Rule 39 would remove state supreme court review for habeas purposes. *O'Sullivan*, 526 U.S. at 847-49. This statement alone shows that there is no "actual conflict" between Rule 39 and federal law. Even beyond this, however, the language quoted above from *O'Sullivan* clearly shows the Supreme Court's view that the question of what constitutes the body of "available state remedies" is one of state law, not one of federal law: "there is *nothing* in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available . . . " *Id.* (emphasis added).

Finally, it should be pointed out that *every* other lower court that has considered, post-*O'Sullivan*, the effect of a rule like Rule 39 has held that such a rule permissibly eliminates state supreme court review as an available state remedy that must

be exhausted. The Ninth Circuit found that *O'Sullivan* implicitly overruled its earlier position that Arizona could not remove state supreme court review as an available state remedy to be exhausted. *Swoopes v. Sublett*, 196 F.3d 1008, 1009-11 (9th Cir. 1999). Similarly, the Eighth Circuit held that a Missouri rule clearly stated its intent to place state supreme court review outside the set of available state remedies preceding habeas relief. *Randolph v. Kemna*, 276 F.3d 401, 404 (8th Cir. 2002); *see also Mattis v. Vaughn*, 128 F.Supp.2d 249, 256-61 (E.D. Pa. 2001). Appellee's attempt to rely on *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999), is unsuccessful because Illinois has a discretionary appeal system *without* a rule like the one passed in Arizona, Pennsylvania, Missouri or Tennessee, and so *O'Sullivan* still applies there.

2. Rule 39 operates retroactively to prevent procedural default by Appellant in this case

Next we must address whether Rule 39 applies "retroactively" to Appellant's case in particular. Two Circuit Courts have considered whether a rule like Rule 39 can apply to habeas petitions filed before their promulgation, and have come to opposite conclusions. Dealing with the Missouri rule, the Eighth Circuit rejected the State's argument that "because the amendment to Rule 83.04 has an effective date of July 1, 2002, its invocation" did not help the petitioner, who filed for habeas relief before that date. *Randolph*, 276 F.3d at 404. The Eighth Circuit based its conclusion on the Rule's language, which indicated that it was not changing Missouri law to exclude state supreme court review as an available remedy, but rather was clarifying what had already been Missouri law. *Id.* "The order recites that 'In order to state the existing law in Missouri, the Court notes that transfer of a case . . . to this Court . . . is not part of the standard review process for the purposes of federal habeas corpus review.'" *Id.* The *Randolph* court reasoned that because the announcement of the Missouri rule purported to clarify the existing law, rather than change it, the rule had applied when

the petitioner had filed for habeas relief, and so was not even being applied retroactively in that case. *Id.*

On the other hand, the Third Circuit refused to apply the Pennsylvania rule, passed in May 2000, to remove the procedural default from a habeas petition filed before that date. *Wenger v. Frank*, 266 F.3d 218, 225-226 (3rd Cir. 2001). The Third Circuit based its conclusion on three considerations. First, it looked to the language of the Pennsylvania rule, which announced, "AND NOW, this 9th day of May, 2000 . . . we hereby declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal . . . in order to be deemed to have exhausted all available state remedies . . . This Order shall be effective immediately." *Id.* at 224-25 (internal quotations omitted). The Third Circuit found that language to allow application of the rule only on or after May 9, 2000, because it announced that it would be "effective immediately," not as of some prior date. *Id.* at 225. Based on that same language, the *Wenger* court also found that the Pennsylvania rule had amended Pennsylvania law, and that prior to its passage, state supreme court review had been an available state remedy in Pennsylvania. *Id.* at 226. This, of course, stands in contrast to the language of the Missouri rule, which established that it was clarifying existing law rather than creating different law on the subject. Finally, the Third Circuit invoked policy considerations, surmising that allowing retroactive application of the Pennsylvania rule would not serve the rule's purpose of easing the burden on the state supreme court's docket because the state supreme court had already passed on those petitions filed before the rule. *Id.* at 225-26 (citing *Mattis*, 128 F.Supp.2d at 262). Thus, the rule would merely serve to burden the federal courts with erstwhile dormant habeas cases, without providing any corresponding benefit to the state court system. *Mattis*, 128 F.Supp.2d at 262.

The instant case seems more similar to the one in *Randolph* than in *Wenger* because of the language of Rule 39. Specifically, Rule 39 announced its applicability to "all

appeals from criminal convictions or post-conviction relief matters from and after July 1, 1967." Tenn. Sup. Ct. R. 39. This language clearly distinguishes it from the Pennsylvania rule discussed in *Wenger*, which used only prospective language. Similarly, this language from Rule 39 indicates that it is merely clarifying the state of Tennessee law as it has existed since 1967, not changing the law of available state remedies, making this case like the one in *Randolph* and distinguishing it from that in *Wenger*. Indeed, in its order promulgating Rule 39, the Tennessee Supreme Court explicitly stated that it was clarifying rather than changing existing law.

We recognize that criminal and post-conviction relief litigants have routinely petitioned this Court for permission to appeal upon the Court of Criminal Appeals' denial of relief in order to exhaust all available state remedies for purposes of federal habeas corpus litigation. *In order to clarify that denial of relief by the Court of Criminal Appeals shall constitute exhaustion of state remedies for federal habeas corpus purposes*, we hereby adopt the following Rule 39.

*In re: Order Establishing Rule 39, Rules of the Supreme Court of Tennessee: Exhaustion of Remedies* (Tenn. Sup. Ct. June 28, 2001). This reading is also bolstered by the Tenn. R. App. P. 11 advisory committee's note, which explains that Rule 39 "works no change to" Tenn. R. App. P. 11, the rule governing appeal to the Tennessee Supreme Court. In short, the language and history of Rule 39 strongly persuades this Court that it should be applied retroactively.

The Court recognizes that federal courts interpreting Tennessee law have, until the passage of Rule 39, always required appeal to the Tennessee Supreme Court as part of the habeas exhaustion requirement, suggesting that perhaps Rule 39 changed Tennessee law rather than merely clarifying it. *E.g., Jones v. Jones*, 76 F.Supp.2d 850, 856-57 (E.D. Tenn. 1999); *Abdur'Rahman v. Bell*, 999 F.Supp. 1073, 1080 (M.D. Tenn. 1998), *vacated on other grounds by* 226 F.3d

696 (6th Cir. 2000); *Cole v. Campbell*, 703 F.Supp. 657, 659 (M.D. Tenn. 1988); *Layman v. Russell*, 300 F.Supp. 430, 431 (E.D. Tenn. 1969). As the language quoted from the Order above shows, however, the Tennessee Supreme Court was also cognizant of this federal court history and sought to clarify the law with respect to Rule 39. Finally, this Court notes the policy argument discussed by the Third Circuit in *Wenger*, but respects Tennessee's law on the subject of what constitutes available remedies within its own state, even if it results in increased burden on the federal courts. This is true especially here, where Rule 39 clarifies existing law rather than changing the law. For all of these reasons, this Court applies Rule 39 to Appellant's case and finds that his Confrontation Clause claim is not procedurally defaulted.

B.   The request to amend the record

Appellant observes that the record before the District Court omitted the transcript of the closing arguments from his trial. Appellant alleges that the closing argument transcript is replete with evidence that the prosecution relied heavily on Crowell's statements in securing his conviction at trial. Appellant argues that, in order to determine whether he deserves habeas relief, this Court must have the entire trial record before it, especially such material portion as the closing argument. Accordingly, Appellant urges the Court to amend the record before it by adding the closing argument transcript, and offers that the Court has to power to so amend the record under Fed. R. App. P. 10(e)(2)(b).

Appellee does not contest the materiality of the closing argument transcript. Rather, Appellee submits that Fed. R. App. P. 10(e) does not authorize this Court to amend the record as Appellant requests. Specifically, Appellee argues that this Court cannot examine evidence that was before neither the state appellate courts nor the District Court.

Rule 10(e) allows amendment of the record on appeal only under two circumstances: "(1) when the parties dispute whether the record actually discloses what occurred in the District Court and (2) when a material matter is omitted by

error or accident." *E.g., United States v. Barrow*, 118 F.3d 482, 487 (6th Cir. 1997). Thus, the purpose of amendment under this rule is to ensure that the appellate record accurately reflects the record before the District Court, *not* to provide this Court with new evidence not before the District Court, even if the new evidence is substantial. *Id.* at 487-88 (citing *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 641 (6th Cir. 1982)). Apart from Rule 10(e), however, a District Court must make a review of the entire state court trial transcript in habeas cases, and where substantial portions of that transcript were omitted before the District Court, a habeas case should be remanded to the District Court for consideration in light of the full record. *Hall v. Arbogast*, No. 88-5529, 1989 WL 119371, at **1 (6th Cir. Oct. 12, 1989) (citing *Townsend v. Sain*, 372 U.S. 293, 319 (1963)).

Although there is no published Sixth Circuit law on the subject, the above citation from *Hall* indicates that the entire trial transcript, including the closing arguments, should have been reviewed by Judge Echols, and that the case should now be remanded back to the District Court for review in light of the full record. The other Circuit Courts that have considered the issue have unanimously adopted this approach. *Magouirk v. Phillips*, 144 F.3d 348, 362-63 (5th Cir. 1998); *Aliwoli v. Gilmore*, 127 F.3d 632, 633-34 (7th Cir. 1997); *Beck v. Bowersox*, 257 F.3d 900, 901-02 (8th Cir. 2001); *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997) (citing *Vicks v. Bunnell*, 875 F.2d 258, 259 (9th Cir. 1989) ("the court must at least have the entire trial transcript" to make a habeas determination)). Appellee contends that these cases are inapposite because they deal with situations where at least the reviewing *state* courts had the entire transcripts before them, whereas here, the state appellate courts did not have the full record. Nothing in the language of these cases, however, limits their holdings in this manner; they all stand for the proposition that the District Court *must* have the trial transcript before it when making habeas determinations. Appellee is correct in noting that this Court cannot be the first to review these new transcript portions, i.e., without their

having been before the District Court. *E.g., S & E Shipping*, 678 F.2d at 641. This does not mean, however, that this Court should ignore the need to peruse the entire trial transcript, but rather, it indicates that this Court should remand the case to the District Court for consideration in light of the full record. *Hall*, 1989 WL 119371, at **1 ("the district court should review the state transcript. Therefore, the motion to remand is well-taken"); *Beck*, 257 F.3d at 901-02.

C.  The Confrontation Clause claim

Also before the court is Appellant's Confrontation Clause claim. As stated above, the appropriate course of action is to remand the case rather than consider the merits of the claim at this time, and so the Court does not yet reach the merits of Appellant's habeas claim.

**III.  Conclusion**

For the reasons stated above, we VACATE the judgment of the District Court denying Appellant's habeas petition on procedural default grounds, and REMAND for further proceedings consistent with this opinion.