<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name:  15a0575n.06

Case No. 14-6070

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| DAMONE BUCKMAN, | ) | **FILED** |
|  | ) | Aug 14, 2015 |
| **Petitioner-Appellant,** | ) | DEBORAH S. HUNT, Clerk |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE WESTERN DISTRICT OF |
|  | ) | KENTUCKY |
| GARY BECKSTROM, | ) |  |
|  | ) | **OPINION** |
| **Respondent-Appellee.** | ) |  |

**BEFORE: BOGGS and MOORE, Circuit Judges; and REEVES, District Judge.**[*]

**DANNY C. REEVES, District Judge.**  Damone Buckman, an inmate currently confined at the Eastern Kentucky Correctional Complex in Morgan County, Kentucky, appeals the district court's denial of his petition for federal habeas corpus relief under 28 U.S.C. § 2254.  The district court held that the state court did not unreasonably apply clearly-established federal law by admitting the tape-recorded testimony of an unavailable witness at trial.  Because the evidence presented at trial was sufficient to establish that Buckman procured the witness's absence, it was not unreasonable for the state court to find that Buckman forfeited his right to confront that witness.  As a result, we **AFFIRM** the judgment of the district court.

---

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

**I.**

Posing as law enforcement officers, complete with badges and flashing lights, Buckman and his co-defendant, Steven Hirschauer, committed a series of robberies in Louisville, Kentucky. [R. 6-2, Page ID # 85–93] On August 30, 2002, victims Ronny Culbreath and James Neal were confronted by a small green car with flashing police lights. They were approached by two men — later identified as Buckman and Hirschauer — who handcuffed Culbreath, emptied the victims' pockets at gunpoint, and stole Culbreath's car. [*Id.*, Page ID # 244–45] On September 4, 2002, Hirschauer was stopped by residents when he tried to force his way into an apartment complex. Wearing a police badge and identifying himself as a police officer, Hirschauer ordered three men to step outside the building. After taking their money, he left in a car with tinted windows and police lights. [*Id.*, Page ID # 245] Finally, on the same date, victim Demetrius Roundtree was stopped by Hirschauer outside an apartment building. Pointing his gun at Roundtree and his friends, Hirschauer flashed his badge and ordered the group to lie on the ground. [*Id.*] After taking their money, he and Buckman absconded in the car bearing police lights. Roundtree promptly alerted a local police patrol unit, who gave chase. When Hirschauer and Buckman realized they were being pursued by genuine police officers, the two abandoned the phony police car and ran in different directions. [*Id.*]

Police apprehended Hirschauer and determined that the car the defendants had been using belonged to Paula Ohligschlager. Later, the investigating officers learned that Ohligschlager, who was Hirschauer's girlfriend, had purchased the blue police lights. [R. 6-2, Page ID # 245–46] In addition, Culbreath's stolen car was located behind Ohligschlager's apartment. During their investigation, officers interviewed Terreba Sanders, Buckman's then-girlfriend and Ohligschalger's roommate. In a voluntary, tape-recorded statement, Sanders implicated

Buckman, Ohligschlager, and Hirschauer in the commission of the robberies. [*Id.*, Page ID # 246–47] Buckman was eventually arrested in Harrisburg, Pennsylvania, and returned to Kentucky to stand trial. [*Id.*, Page ID # 245]

In 2004, Buckman was tried by a jury in Kentucky's Jefferson Circuit Court on five counts of First Degree Robbery, one count of Theft By Unlawful Taking Over $300, and five counts of Impersonating a Peace Officer, all in violation of Kentucky law. [R. 6-2, Page ID # 85–93] The prosecution served a subpoena on Sanders to testify against Buckman. However, Sanders was not present when the trial against Buckman began. The trial judge issued a warrant to compel her attendance, but Sanders did not appear. [*Id.*, Page ID # 97] Instead, Camille Ford, the mother of Buckman's children, appeared at trial and was called as a witness by the prosecution. [*Id.*, Page ID # 248] Because evidence demonstrated that Ford had intimidated Sanders to dissuade her from testifying, the trial judge deemed Sanders to be an "unavailable" witness and, over Buckman's objection, permitted the prosecution to play Sanders's taped statement. [*Id.*, Page ID # 246] The jury found Buckman guilty, and he was sentenced to thirty-seven years of imprisonment. [*Id.*, Page ID # 98–101]

Buckman appealed to the Supreme Court of Kentucky, which affirmed his convictions for robbery and impersonating a police officer. [R. 6-2, Page ID # 244–54] The court considered and rejected Buckman's argument that the admission of Sanders's tape-recorded statements violated the Confrontation Clause of the United States Constitution. [*Id.*, Page ID # 249] *See* U.S. Const. amend. VI. Specifically, it found that adequate circumstantial proof had been presented at trial to show, by a preponderance of the evidence, that Buckman had procured, or acquiesced in procuring, Sanders's unavailability, satisfying the hearsay exception of Rule

804(b)(5) of the Kentucky Rules of Evidence.[1]  [R. 6-2, Page ID # 248]  Applying *Crawford v. Washington*, 541 U.S. 36 (2004), and *Davis v. Washington*, 547 U.S. 813 (2006), the court held that Buckman's confrontation claims were extinguished on equitable grounds based on his wrongdoing, and that the taped statement was properly admitted.[2]  *Buckman v. Commonwealth*, 2005-SC-148-MR, 2007 WL 858815, at *2–3 (Ky. Mar. 22, 2007).

Buckman petitioned the Supreme Court of Kentucky for rehearing on the Confrontation Clause issue but his petition was denied.  [R. 6-3, Page ID # 266]  Likewise, Buckman's petition for a writ of certiorari to the United States Supreme Court was denied.  [*Id.*, Page ID # 293] Having exhausted all state remedies regarding his Sixth Amendment claim, Buckman petitioned the United States District Court for the Western District of Kentucky for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  [R. 1, Page ID # 1–27]  In addition to the Confrontation Clause claim, Buckman claimed that his counsel provided ineffective assistance by failing to introduce expert-witness testimony to refute a victim's identification.  The United States magistrate judge assigned to the case reviewed Buckman's claims and recommended that the district court deny the petition.  [R. 8, Page ID # 525–57]  On August 19, 2014, the district court adopted the magistrate judge's recommendation, denying the petition but certifying Buckman's Confrontation Clause claim for appeal.  [R. 11, Page ID # 570–71]  This timely appeal followed.

---

[1]Under KRE 804(a)(5), a declarant is "unavailable" when he or she is "absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance by process or other reasonable means."  KRE 804(b)(5) provides that "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness" will not be excluded by the hearsay rule.

[2]Justice McAnulty authored a dissenting opinion for the Supreme Court of Kentucky, contending that, "[t]here is no evidence that Ford was under [Buckman's] control or even that she was acting in accordance with his wishes.  Respectfully, I feel that this falls far short of the preponderance of the evidence standard adopted by the Court in this case, and thus conclude that *Crawford* precludes use of the taped statement."  *Buckman v. Commonwealth*, 2005-SC-148-MR, 2007 WL 858815, at *7 (Ky. Mar. 22, 2007) (McAnulty, J., dissenting).

## II.

In a habeas proceeding, this court typically reviews the district court's legal conclusions *de novo* and its factual findings for clear error. *Adams v. Holland*, 330 F.3d 398, 400 (6th Cir. 2003). Nevertheless, when a district court bases its decision on a transcript from the petitioner's state trial proceedings, thus making no credibility determinations or other apparent findings of fact, this court also reviews the district court's factual findings *de novo*. *Williams v. Bagley*, 380 F.3d 932, 941 (6th Cir. 2004). Because the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to Buckman's petition, this court reviews his claim under the standards set out in 28 U.S.C. § 2254(d). That section provides that a federal court may not grant a writ of habeas corpus after a state court has adjudicated the case on the merits unless the state court's adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" clearly established law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or "if the state court confronts facts that are materially indistinguishable" from a Supreme Court decision and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362 (2000). An "unreasonable application" of clearly established federal law occurs "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* at 413 (O'Connor, J.,

concurring); *see also Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

The standard of review under § 2254(d) is a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given "the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *see also Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012) ("Section 2254(d), as amended by AEDPA, is a purposefully demanding standard.") (internal quotation marks omitted). A state court's determination of factual issues shall be presumed to be correct. 28 U.S.C. § 2254(e)(1); *Thompson v. Bell*, 580 F.3d 423, 434 (6th Cir. 2009). The petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *Mahdi v. Bagley*, 522 F.3d 631, 636–37 (6th Cir. 2008).

Habeas relief may only be granted "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). In other words, Buckman must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III.

Buckman's sole argument on appeal is that the Supreme Court of Kentucky unreasonably applied *Crawford* and *Davis* in the absence of adequate proof of his involvement in Sanders's unavailability, in violation of the Sixth Amendment's Confrontation Clause. The Sixth Amendment establishes a criminal defendant's right to confront the witnesses against him – a right primarily secured by cross-examination. U.S. Const. amend. VI; *see Davis v. Alaska*,

415 U.S. 308, 315 (1974). This right extends to state proceedings. *Pointer v. Texas*, 380 U.S. 400, 406 (1965). The core dispute, therefore, is whether the state court unreasonably determined that Sanders's unavailability at trial was procured by the defendant so as to establish forfeiture by wrongdoing in the manner permitted by clearly established federal law.

At the time of the Supreme Court of Kentucky's ruling, the pertinent clearly established federal law was set forth in *Crawford* and *Davis*. The Supreme Court of Kentucky relied on these cases in its analysis of Buckman's Confrontation Clause claim. [R. 6-2, Page ID # 247–48] In *Crawford*, the Supreme Court held that the Confrontation Clause bars the admission of testimonial hearsay unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine the declarant. 541 U.S. at 59. "Testimonial" statements include "at a minimum . . . prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68. The parties do not dispute that Sanders's statements, which were made to the police during an interview, were testimonial in nature. Recorded statements, "knowingly given in response to structured police questioning, qualif[y] [as testimonial] under any conceivable definition." *Id.* at 53 n.4. The hearsay exception invoked by the prosecution was expressly recognized by the Supreme Court in *Crawford*. 541 U.S. at 62 (forfeiture by wrongdoing extinguishes confrontation claims on equitable grounds).

Again, in *Davis*, the Supreme Court stated, "[w]e reiterate what we said in *Crawford*: that 'the rule of forfeiture by wrongdoing … extinguishes confrontation claims on essentially equitable grounds.'" 547 U.S. at 833 (quoting *Crawford*, 541 U.S. at 62). In other words, "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." 547 U.S. at 833. The Court explained that, "when defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth

Amendment does not require courts to acquiesce." *Id.* Therefore, at the time of the Supreme Court of Kentucky's decision, clearly-established federal law recognized an exception to a defendant's Sixth Amendment right to confront a witness when the witness's unavailability was a result of the defendant's wrongdoing. While the Supreme Court in *Davis* did not set out a standard necessary to demonstrate a constitutional forfeiture, it noted that "federal courts using Federal Rule of Evidence 804(b)(6), which codifies the forfeiture doctrine, have generally held the Government to the preponderance-of-the-evidence standard." *Id.* Likewise, this was the standard applied by the Supreme Court of Kentucky. [R. 6-2, Page ID # 238]

In light of *Davis* and *Crawford*, the Supreme Court of Kentucky upheld the admission of the out-of-court testimony because the prosecution had established by a preponderance of the evidence that Buckman acquiesced in Ford's efforts to prevent Sanders from testifying at trial. [R. 6-2, Page ID # 248] It considered the circumstantial evidence presented at trial, finding that the prosecution had shown that Buckman and Ford had an ongoing relationship sufficient to conclude that Buckman knew of, or was involved in, Ford's intimidation of Sanders. They had a child together, and evidence suggested that the two were living together when police attempted to arrest Buckman in 2002. Ford appeared at the trial in support of the defendant. [*Id.*] In fact, during jury deliberations, the trial court issued a warrant for Ford's arrest for attempting to convince jurors to find Buckman not guilty. [R. 6-4, Page ID # 438] Additionally, Ford's cellphone records reflected repeated phone calls to Sanders's cellphone prior to Buckman's trial, and the court reasonably noted that Sanders had sworn out a warrant against Ford for intimidating a witness, contrary to Ford's testimony that she did not know Sanders. Accordingly, the court found that Buckman had effectively procured Sanders's absence, and it

proceeded to apply *Crawford* and *Davis*, ultimately concluding that the recorded testimony was admissible because Buckman forfeited his Confrontation Clause rights. [R. 6-2, Page ID # 248]

The Supreme Court of Kentucky properly identified and reasonably applied clearly-established federal law to Buckman's Sixth Amendment claims. Based on a preponderance-of-evidence standard, the Supreme Court of Kentucky concluded that Sanders was unavailable; her unavailability was a result of Buckman's wrongdoing with Ford; and, as a result, Buckman forfeited his right to confront Sanders as a witness under *Crawford* and *Davis*. [R. 6-2, Page ID # 247] Buckman has not cleared the substantial threshold of establishing that the state court's determination was unreasonable; the Supreme Court of Kentucky's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Buckman argues that there was no proof that he contacted Ford or knew of Ford's pre-trial contact with Sanders. However, there was sufficient evidence for a court to determine otherwise. At the time of Buckman's direct appeal, the Supreme Court of Kentucky's holding and rationale in upholding the admission of Sanders's taped statement were legally sound under federal law. Thus, Buckman's claim of constitutional error fails.

Moreover, even assuming that the use of Sanders's testimony violated the Confrontation Clause, the violation constitutes harmless error. A Confrontation Clause violation must have a "substantial and injurious effect or influence in determining the jury's verdict" to merit reversal on collateral review. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In a review for constitutional harmlessness, this court considers the statement's significance to the prosecution's case, whether it was cumulative, the presence or absence of corroborating evidence, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Id.*

Here, in addition to Sanders's testimony, the prosecution relied significantly on the testimony of other witnesses. Sanders's statements were corroborated by Buckman's co-defendants, Ohligschlager and Hirschauer. At trial, Ohligschlager testified in detail about Buckman's participation in the robberies. [R. 6-3, Page ID # 396] She detailed her co-defendants' plans to impersonate police officers and rob drug dealers, and she identified the loot of the various crimes. In addition, Hirschauer testified about Buckman's participation in the robberies, stating that it was Buckman who held the gun when the victims were robbed. [*Id.*, Page ID # 396–97] Finally, Culbreath identified Buckman as the man who robbed him and stole his car. Based on the foregoing, the prosecution's case against Buckman would not have been significantly weakened in the absence of the tape-recorded statements. As a result, the introduction of Sanders's testimony against Buckman did not substantially affect the verdict returned against him and was, at most, harmless.

## IV.

The Supreme Court of Kentucky was not unreasonable in its interpretation of the facts or in the application of *Davis* and *Crawford* when it decided that Buckman's confrontation rights were not violated by the admission of Sanders's recorded statements. Further, admission of this evidence did not influence the outcome of the jury's verdict. Therefore, we **AFFIRM** the judgment of the district court.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.**  I concur in the judgment solely on the ground of harmless error.