# United States Court of Appeals
## For the First Circuit

No. 23-1638

JUAN M. CRESPO-MORALES,

Petitioner, Appellant,

v.

NICANOR CARO-DELGADO,

Respondent, Appellee,

CÉSAR R. MIRANDA RODRÍGUEZ,

Respondent.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado Hernández, U.S. District Judge]

Before

Barron, Chief Judge,
Breyer,* Associate Justice,
and Gelpí, Circuit Judge.

Robert M. Fitzgerald, Assistant Federal Public Defender, with whom Rachel Brill, Federal Public Defender, District of Puerto Rico, and Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appellate Unit, were on brief, for appellant.

Francisco J. González-Magaz, with whom Omar Andino Figueroa, Solicitor General of Puerto Rico, was on brief, for appellee.

---

* Hon. Stephen G. Breyer, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

May 22, 2026

**BREYER**, **Associate Justice**.  In 1996, a jury in the Commonwealth of Puerto Rico convicted Juan Crespo-Morales on four counts of first-degree murder and other related charges.  The Commonwealth judge sentenced him to nearly 600 years in prison, and he began to serve his sentence.  Around twenty years later, he filed a motion for a new trial in the Commonwealth court.  He claimed that Commonwealth prosecutors had violated the holding of Brady v. Maryland, 373 U.S. 83 (1963), because they had failed to give him material evidence that would have proved helpful to his defense.  See id. at 87.  After the Commonwealth court denied his Brady claim, Crespo petitioned a federal district court for a writ of habeas corpus under 28 U.S.C. § 2254.

The district court initially dismissed the § 2254 petition, but it did so before the Commonwealth had produced the record from Crespo's trial and postconviction litigation.  On appeal, we vacated and remanded the district court's judgment, explaining that the record before us did not reflect compliance with the rules governing § 2254 proceedings.  On remand, the Commonwealth supplemented the record, but certain gaps remained.  Most notably, the Commonwealth did not furnish a transcript or narrative summary of the testimony of a key witness named Regino Burgos-Torres.  The district court nevertheless denied Crespo's petition.

We once again vacate the district court's judgment. We hold that the district court erred because it could not have reasonably evaluated the Commonwealth court's adjudication of Crespo's Brady claim as required under § 2254 without knowing more about the content of Burgos-Torres's testimony. We therefore remand this case back to the district court with instructions to order the production of a transcript of Burgos-Torres's trial testimony (or a narrative summary of that testimony if the transcript is unavailable).

**I.**

<u>A.</u>

A jury in a Commonwealth court convicted Crespo of murdering (by shooting) four persons: William Curet-Suárez, Ángel Luis Díaz-Cruz, Ramón Bon-Home-Reyes, and Teresa Maldonado-Figueroa. For ease of exposition, we shall call the shooting victims V1, V2, V3, and V4, respectively. The shooting took place in the Piñones Sector of Loíza, and subsequently became known as the "Piñones Massacre."

At Crespo's trial, the Commonwealth argued that the motive for the Massacre was revenge; Crespo allegedly thought that V1, V2, and V3 had killed his two brothers as part of an ongoing turf war between two rival gangs. (It is unclear from the record before us what role, if any, V4 had in this turf war). To support this theory, the Commonwealth relied on the testimony of

Burgos-Torres, who had previously been a member of the same gang as V1, V2, and V3. Because we lack a transcript or summary of Burgos-Torres's testimony, we do not know precisely what he said at trial. But records from the later post-trial Commonwealth evidentiary hearing (which we shall discuss below) suggest that Burgos-Torres told the following story to the jury: After Crespo's brothers were murdered, Crespo contacted Burgos-Torres in search of V1, V2, and V3. Burgos-Torres located the three men in Piñones, and he and Crespo "co-ordered" a hit against them, resulting in the Piñones Massacre.

Sometime after trial, Crespo learned that the Commonwealth had not provided him with evidence that, in his view, might have led the jury not to convict him. In particular, a Commonwealth prosecutor had taken affidavits from two women who had witnessed the killing of Crespo's brothers (which took place on the street where the women lived). The women implicated only two perpetrators in the murder of the Crespo brothers (two perpetrators who Crespo did not kill). They were: Andrés Vázquez-Ayala, whom we shall call P1, and Carlos Pérez-Figueroa, whom we shall call P2. Neither woman purported to see either V1, V2, or V3 at the scene of the murder.

On the basis of the women's affidavits Crespo filed a motion for a new trial in Commonwealth court. He argued that the prosecution's failure to turn over the women's affidavits entitled

him to a new trial under Brady and its progeny, which hold that the State's suppression of "exculpatory" or "impeaching" evidence violates the Due Process Clause when it results in "prejudice" to the accused. Strickler v. Greene, 527 U.S. 263, 282 (1999).

The Commonwealth court held an evidentiary hearing (the same one referenced above) to resolve Crespo's Brady claim. This evidentiary hearing took place in 2015, and Crespo testified. He recalled that, at his trial in 1996, Burgos-Torres had identified "five individuals" as his brother's killers: V1, V2, and V3, along with P1 and P2. Crespo also explained his theory that the women's affidavits undermined Burgos-Torres's 1996 account because they suggested that V1, V2, and V3 actually had no involvement in the murder of the Crespo brothers. This, in Crespo's view, undermined the prosecution's theory of motive.

Burgos-Torres did not testify at the 2015 hearing. But the Commonwealth court had access to a transcript of Burgos-Torres's testimony from the 1996 trial. After examining this transcript, along the with the women's affidavits, the Commonwealth court denied Crespo's motion for a new trial. It held that no Brady violation occurred because it could not "see how . . . the presentation of [the women's affidavits] would have led to another verdict."

The Commonwealth court in particular emphasized Burgos-Torres's 1996 trial testimony, including his statement

"mention[ing]" V1, V2, and V3 as "the supposed executioners" of Crespo's brothers. From this testimony, the court reasoned that "[t]he evidence in this case was to prove that the murders . . . were ordered by [Crespo] as a result of his belief that the victims had caused the death of his brothers." Put differently, what mattered was not whether V1, V2, and V3 "were the perpetrators" in his brothers' murders but whether Crespo "belie[ved]" that they were. The court thus concluded that disclosure of the women's affidavits before trial would not have led to a different result, as the affidavits did not undermine Burgos-Torres's testimony about Crespo's belief. Both the intermediate court of appeals and the Puerto Rico Supreme Court denied further review.

## B.

Having exhausted his Commonwealth remedies, Crespo filed a § 2254 petition in federal district court raising the same Brady claim. Section 2254 bars habeas relief for "any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). Invoking these standards, the Commonwealth moved for summary

judgment in the district court, but it did so without producing the record from Crespo's trial or his evidentiary hearing.

Despite the lack of a record, the district court granted the Commonwealth's motion and entered judgment against Crespo. It determined that the Commonwealth court's adjudication of Crespo's Brady claim had not resulted in a decision that was contrary to clearly established law or based on an unreasonable determination of the facts. The district court did not explain how it was able to reach this conclusion without reviewing the underlying record.

Crespo applied for a certificate of appealability in this Court. See 28 U.S.C. § 2253(c)(1)(A). In reviewing Crespo's application, we determined that the record "d[id] not reflect compliance with Rule 5(c) of the Rules Governing § 2254 Cases." As relevant, that rule requires a State answering a § 2254 petition to "indicate what transcripts" from the record "are available" and to produce "parts of the transcript that the respondent considers relevant." Rule 5(c). If "a transcript cannot be obtained," the State "may submit a narrative summary of the evidence." Id.

Citing Rule 5(c), we explained that the lack of a transcript of Burgos-Torres's testimony "left us unable" to evaluate "the district court's adjudication of [Crespo's] claim under Brady . . . and its progeny" and thus warranted a certificate of appealability. We accordingly vacated the district court's judgment and remanded for "reconsideration of [Crespo's] petition

- 8 -

in a manner consistent with Rule 5(c) and any other applicable rules."

On remand, the district court ordered the Commonwealth to supplement the record, including by producing either a transcript of Burgos-Torres's testimony or a narrative summary if the transcript was unavailable. Over the next several months, the Commonwealth filed a series of seven status reports updating the district court as to its progress. The third status report, filed in October 2020, informed the district court that counsel for the Commonwealth had "examined the casefile . . . and was able to locate Mr. Regino Burgos-Torres's trial testimony in its entirety." Counsel explained, however, that the file was "damage[d] by flooding caused by Hurricane Maria and special handling [was] needed in order to examine the documents." The Commonwealth's subsequent status reports, including its final report from March 2021, continued to indicate that it was in the process of obtaining a readable transcript of Burgos-Torres's testimony.

No further action took place on the district court's docket until February 2023, when Crespo filed a motion for a status update. In response, the district court entered an order stating that the case was "under advisement." The next month, the district court entered judgment denying Crespo's § 2254 petition -- even though the Commonwealth had yet to produce a transcript or

narrative summary of Burgos-Torres's testimony. The district court did not explain why, in its view, the transcript or summary was no longer necessary for it to render a decision.

Crespo again applied for a certificate of appealability. We granted the application limited to two issues: first, whether the district court complied with applicable habeas rules and our mandate when it resolved Crespo's petition without a transcript or narrative summary of Burgos-Torres's testimony; and second, whether the district court erred in denying Crespo's Brady claim on the merits. Because we determine that the district court did not comply with applicable habeas rules, we do not address the second issue here.

## II.

We agree with Crespo that the district court erred in dismissing his petition without reviewing Burgos-Torres's testimony -- though not necessarily because the district court violated our mandate. Instead, we hold that the district court did not comply with applicable habeas rules -- namely the standards set forth in § 2254 itself.

Section 2254 requires a district court to evaluate whether a State court's adjudication of a federal claim resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts." 28 U.S.C.

§ 2254(d)(1), (d)(2). We do not see how the district court could have evaluated the Commonwealth court's adjudication of Crespo's Brady claim under these standards without a transcript or narrative summary of Burgos-Torres's testimony.

The Commonwealth court appears to have denied Crespo's Brady claim either on materiality grounds or for lack of prejudice. It explained that the allegedly suppressed evidence (that is, the women's affidavits) did not "cause[] doubt regarding" Crespo's "actions" because the evidence presented at trial "was to prove" that the Piñones Massacre was "ordered by him as a result of his belief" that V1, V2, and V3 "had caused the death of his brothers." In other words, the Commonwealth court concluded that the suppression of the women's affidavits did not result in prejudice because they did not contradict Burgos-Torres's testimony suggesting Crespo's motive was rooted in his belief that V1, V2, and V3 had killed his brothers.

In our view, without knowing the reasonably precise content of Burgos-Torres's testimony, the district court could not have evaluated the Commonwealth court's Brady analysis -- let alone determine whether it was contrary to or rested on an unreasonable application of Brady and its progeny or was based on an unreasonable determination of the facts as they were presented at trial and in the postconviction proceeding. See 28 U.S.C. § 2254(d)(1)-(2).

Whether the women's affidavits were material or whether their suppression prejudiced Crespo may depend upon just what Burgos-Torres said at trial. With the affidavits in hand, Crespo's counsel might have wanted to find out why Burgos-Torres implicated V1, V2, and V3 in the murder of the Crespo brothers. After all, those affidavits suggest that P1 and P2 -- and not V1, V2, and V3 -- were involved. Had he known of the affidavits, Crespo's counsel might have sought to discredit Burgos-Torres's testimony with this new information. This in turn could have undermined the prosecution's theory of motive. Ultimately, we do not know whether this alternate line of questioning would have swayed the jury. Indeed, the Commonwealth court appears to have concluded that it would not have. But we do know that it is impossible to evaluate this conclusion as required under § 2254 without knowing the extent to which the women's affidavits contradict Burgos-Torres's testimony.

Our reading of § 2254 accords with the views of several of our sister circuits. Indeed, at least five other circuits hold that a district court must review important portions of the state court record before it can resolve a petition under the standards of § 2254. See Magouirk v. Phillips, 144 F.3d 348, 362 (5th Cir. 1998) ("Regardless of how deferential the standard of review for state court fact findings [under § 2254], we fail to see how any review at all can be conducted when the relevant portions of the

- 12 -

state court record on remand are not available for review."); see also Adams v. Holland, 330 F.3d 398, 406 (6th Cir. 2003); Aliwoli v. Gilmore, 127 F.3d 632, 633 (7th Cir. 1997); Beck v. Bowersox, 257 F.3d 900, 901 (8th Cir. 2001); Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997). Applying that logic here, we hold that the district court erred by denying Crespo's petition without reviewing a transcript or narrative summary of Burgos-Torres's testimony.

## III.

We disagree with the Commonwealth's contention that meaningful review was possible without Burgos-Torres's testimony because the district court had access to the record from Crespo's 2015 evidentiary hearing. According to the Commonwealth, this more limited record sufficed because it included Crespo's admission that, at the 1996 trial, Burgos-Torres named both P1 and P2 (along with V1, V2, and V3) as his brothers' killers. Based on this admission, the Commonwealth argues that the women's affidavits do not actually undermine Burgos-Torres's testimony.

That may be true, but it is difficult to say without the full context of Burgos-Torres's testimony. For instance, Burgos-Torres could have testified that V1, V2, and V3, plus P1 and P2, were all present on the street where the Crespo brothers were murdered. That would certainly be inconsistent with the women's affidavits, which include statements identifying only P1

- 13 -

and P2 as present at the scene. The full context of Burgos-Torres's testimony is necessary, and Crespo's after-the-fact recollection from almost twenty years later is not an adequate substitute.

We also reject the Commonwealth's suggestion that a transcript of Burgos-Torres's testimony is unavailable due to Hurricane Maria. That suggestion is contrary to the representations that the Commonwealth made to the district court -- specifically that it was actively working to "examine the documents" with "special handling." To the extent the Commonwealth later concluded the transcript was not salvageable, it should have updated the district court on this assessment and explained why, in the alternative, it could not produce a narrative summary. Likewise, to the extent the district court independently concluded that the transcript was unsalvageable, it should have explained that conclusion. It should not have done what it did here: reverse course and rule on Crespo's § 2254 petition without explaining why it no longer needed a transcript or narrative summary of Burgos-Torres's testimony.

\* \* \*

We **vacate** the judgment below and **remand** this case with instructions to obtain a transcript (or narrative summary) of Regino Burgos-Torres's trial testimony and to examine Crespo's petition in light of that testimony, along with other evidence in

- 14 -

the record, in order to determine whether the Commonwealth court's denial of Crespo's <u>Brady</u> claim "was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts," <u>id.</u> § 2254(d)(2).